[No. 29575-3-III.    Division Three.    October 27, 2011.]

PLESE-GRAHAM, LLC, *Respondent*, v. ROBERT LOSHBAUGH
ET AL., *Appellants*.

*Richard D. Campbell* (of *Campbell & Bissell PLLC*), for appellants.

*Joseph P. Delay* (of *Delay Curran Thompson Pontarolo & Walker*), for respondent.

¶1 SIDDOWAY, J. — At issue in this case is the personal liability of Robert Loshbaugh, former president of a now-defunct construction company, for obligations arising out of company business that were discussed and documented with a creditor during a period when the company had ceased operations and was administratively dissolved. The trial court granted summary judgment against Mr. Loshbaugh and his marital community on grounds that he agreed to answer personally for the company's obligation and, alternatively, that his promise that the company would pay could be enforced against him personally because it was made at a time when the corporation was de facto dissolved.

¶2 On appeal, Mr. Loshbaugh argues that because of an alleged failure to bring suit in the name of the real party in interest, neither the company's creditor nor its principals can enforce his alleged agreement, a position we reject. But we agree that questions of material fact as to Mr. Loshbaugh's personal liability made summary judgment inappropriate. We reverse the orders granting summary judgment and attorney fees and remand for trial.

## FACTS AND PROCEDURAL BACKGROUND

¶3 For several years up to and including 2008, Ed Loshbaugh & Sons Inc., a licensed general contractor, performed construction work for Plese-Graham LLC, a real estate developer. In 2008, Plese-Graham hired Loshbaugh & Sons to install the water and sewer system for its housing development known as Park Place Addition. In March 2009, after Loshbaugh & Sons underpaid one of its subcontractors, the subcontractor filed a lien against Plese-Graham's property. Failure to pay the subcontractor was symptomatic of Loshbaugh & Sons financial difficulties at the time. After several claims were made against its bond, the bond was cancelled on May 24, the company lost its contractor's license, and it ceased operations.

¶4 On June 24, Plese-Graham, which claims its principals were unaware of the extent of Loshbaugh & Sons'

financial problems, paid the subcontractor $16,265.12 in exchange for release of its lien. Shortly thereafter, on June 30, Rod Plese, one of two members of Plese-Graham, secured the verbal agreement of Robert Loshbaugh—a Loshbaugh & Sons shareholder and director in addition to being its president—to sign a promissory note reimbursing Plese-Graham's payment to the subcontractor.

¶5 Mr. Plese and Mr. Loshbaugh disagree as to the capacity in which Mr. Loshbaugh was asked and agreed to sign. Mr. Plese drafted and sent a proposed promissory note identifying "Bob Loshbaugh" as the payor, which Mr. Loshbaugh rejected, asking that Mr. Plese modify it to substitute the company as payor. Clerk's Papers (CP) at 88. Mr. Plese complied and sent a second note, which, apart from the named payor, was identical to the first. Both notes were payable to "Rod V. Plese and Linda A. Plese, husband and wife." CP at 91. Following several e-mails sent by Mr. Plese in September and October asking whether Mr. Loshbaugh had signed and returned "the note," Mr. Loshbaugh indicated in e-mails on October 5 and 19 that he had. CP at 69 ("Yes is on way"), 67 ("I mailed that note but if you haven't received I can mail a copy."). Mr. Plese denies ever receiving any signed note from Mr. Loshbaugh.

¶6 Loshbaugh & Sons' corporate license had expired without renewal on June 30, 2009 and the company was administratively dissolved by the secretary of state on October 1, a few days before Mr. Loshbaugh's written assurances that a note had been signed and returned. Upon dissolution, the company had no assets with which to pay Plese-Graham and other creditors.

¶7 In December 2009, Plese-Graham filed a complaint against Loshbaugh & Sons and Robert Loshbaugh and his wife, among others. The complaint alleged that the defendants had been overpaid as a result of Plese-Graham's payment of the construction contract price and the additional cost of removing the lien.

¶8 Plese-Graham's claims were subject to mandatory arbitration. In July 2010, an arbitrator found Loshbaugh & Sons, Mr. Loshbaugh, and his marital community jointly and severally liable to Plese-Graham in the amount of $16,265.12, plus interest at 12 percent per annum from June 24, 2009.

¶9 Only Mr. Loshbaugh, individually, appealed the arbitrator's ruling to superior court. He, and thereafter Plese-Graham, moved the court for summary judgment. Both parties' motions addressed Mr. Loshbaugh's undisputed promise, although in a disputed capacity, to reimburse Plese-Graham's payment of the subcontractor and to formalize the agreement with a promissory note payable to Mr. and Mrs. Plese. Plese-Graham alleged two theories of recovery against Mr. Loshbaugh personally: (1) breach by Mr. Loshbaugh of a verbal promise to deliver a personal promissory note and (2) even if his promise was to deliver a corporate note, individual liability based on RCW 23B.02-.040 or a theory of corporate disregard, where his promise was on behalf of a company that Plese-Graham argued was "*de facto*" dissolved. CP at 102.

¶10 Mr. Loshbaugh opposed Plese-Graham's motion with his affidavit disputing that he ever agreed, personally, to reimburse Plese-Graham's payment to the subcontractor. He also argued that enforcement of any such verbal promise, being a promise to answer for the debt of another, was barred by the statute of frauds. He disputed his alleged liability under RCW 23B.02.040 on alternative grounds that (1) Loshbaugh & Sons was not dissolved, de facto or otherwise, at the time he agreed to reimburse Plese-Graham's payment to the subcontractor and (2) in any event, any such agreement was a permitted "winding up" of the corporation's business under RCW 23B.02.050. CP at 114.

¶11 At the hearing on the cross motions for summary judgment, Mr. Loshbaugh's lawyer pointed out for the first time that Plese-Graham, the only named plaintiff, was not the payee named by the promissory notes—something he

admitted having noticed only that morning. The trial court responded that "I will entertain a motion to join [the Pleses] as parties, if necessary" and the lawyer for Plese-Graham so moved; after hearing Mr. Loshbaugh's objection, the trial court granted the motion. Report of Proceedings (RP) at 22.

¶12 The trial court granted Plese-Graham's motion for summary judgment, denied Mr. Loshbaugh's cross motion, entered an order joining the Pleses as parties, and entered judgment, including an award of fees and costs, in favor of Plese-Graham. Mr. Loshbaugh moved for reconsideration and when that was denied, timely appealed. He assigns error to the trial court's (1) granting summary judgment to Rod and Linda Plese, who he argues were improperly joined; (2) granting summary judgment in favor of Plese-Graham, which was not the designated payee of the promise relied upon for the court's decision; (3) entering judgment against Mr. Loshbaugh individually absent a basis therefor; and (4) assessing fees and costs against Mr. Loshbaugh.

## ANALYSIS

## I

¶13 We first address Mr. Loshbaugh's arguments that the trial court erred in recognizing either Plese-Graham or the Pleses as parties entitled to assert claims based on his agreement reached with Mr. Plese in the summer of 2009. He contends that the court's late joinder of the Pleses as plaintiffs prejudiced him because he was prevented from developing discovery in support of a defense of lack of consideration. Br. of Appellants at 2, 16. He assigns error to the trial court's entry of judgment in favor of Plese-Graham because it was not the payee identified by the promissory note relied upon by the court in entering judgment. We review a trial court's rulings on motions to amend a complaint and its application of civil rules for an abuse of discretion. *See Wilson v. Horsley*, 137 Wn.2d 500, 505, 974 P.2d 316 (1999); *Turner v. Stime*, 153 Wn. App. 581,

587-88, 222 P.3d 1243 (2009). These assignments of error are properly considered together where, collectively, they would deprive both Plese-Graham and the Pleses of any claim against Mr. Loshbaugh.

■ ¶14 As applicable here, CR 17(a) provides that "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for . . . joinder . . . of[ ] the real party in interest; and such . . . joinder . . . shall have the same effect as if the action had been commenced in the name of the real party in interest." The purpose of CR 17(a) is to protect a defendant from a subsequent action by the party actually entitled to recover and to expedite litigation by not permitting technical or narrow constructions to interfere with the merits of legitimate controversies. *Beal v. City of Seattle*, 134 Wn.2d 769, 782-83, 954 P.2d 237 (1998). The rule permits joinder of a real party in interest even after trial for the purpose of receiving judgment, so long as the defendant is not prejudiced by the joinder. *Betchard-Clayton, Inc. v. King*, 41 Wn. App. 887, 895, 707 P.2d 1361, *review denied*, 104 Wn.2d 1027 (1985).

■■ ¶15 The rule expressly contemplates that a defendant will raise an "objection" that a claim is not being prosecuted in the name of the real party in interest, after which a reasonable time will be allowed for the plaintiff to take action, through joinder or otherwise, that protects the defendant from the risk of a second claim. Washington cases do not address when an objection must be raised by the defendant but federal cases do, and Washington courts recognize federal cases as "persuasive authority for interpreting the state rule." *Rinke v. Johns-Manville Corp.*, 47 Wn. App. 222, 225, 734 P.2d 533, *review denied*, 108 Wn.2d 1026 (1987). The federal rule's requirement of an objection followed by a reasonable time for the real party to respond, "implies that the defense may *not* be raised at any time, for the real party must have the opportunity to step into the

'unreal' party's shoes and should not be prejudiced by undue delay." *Whelan v. Abell*, 293 U.S. App. D.C. 267, 953 F.2d 663, 672, *cert. denied*, 506 U.S. 906 (1992). The rule "requires the defendant to object in time to allow the opportunity for joinder of the ostensible real party in interest, and the defense may be waived if the defendant does not timely object." *In re Signal Int'l, LLC*, 579 F.3d 478, 487-88 (5th Cir. 2009). Because requirements in the rule are for the benefit of the defendant, an objection should be raised with "reasonable promptness"; if not, the general rule is that the objection is deemed waived. *United HealthCare Corp. v. Am. Trade Ins. Co.*, 88 F.3d 563, 569 (8th Cir. 1996).

¶16 In this case, both Plese-Graham and the Pleses were proper plaintiffs. Mr. Plese testified by affidavit in the trial court and argues on appeal that while the promissory notes identified him and his wife as payees, the purpose of the notes was "to essentially reimburse Plese-Graham." CP at 53; Br. of Resp't at 3. A party to a bargained-for exchange may agree that the consideration for its promise will be delivered to a third party. Plese-Graham's implicit position was that Mr. Plese was authorized to negotiate delivery of a promissory note to the Pleses as the consideration satisfying amounts otherwise due Plese-Graham from Loshbaugh & Sons; Mr. Loshbaugh never challenged that position. Such a tripartite agreement is recognized by Washington cases as a third-party-donee-beneficiary contract. *Oman v. Yates*, 70 Wn.2d 181, 422 P.2d 489 (1967). A characteristic of such contracts is that the donee-beneficiary (here, the Pleses) can be a signatory to the contract, yet no consideration moves from him or her. *Id.* at 182. The duty of the promisor provided by the agreement (here, the duty to deliver a note, either by Loshbaugh & Sons or Mr. Loshbaugh) runs to the donee-beneficiary (the Pleses) rather than to the promisee (Plese-Graham). Contrary to Mr. Loshbaugh's argument that neither Plese-Graham nor the Pleses can enforce such an agreement, the law provides that each of them can. *See*

*Vikingstad v. Baggott*, 46 Wn.2d 494, 497, 282 P.2d 824 (1955) (donee-beneficiary may enforce the contract) (quoting RESTATEMENT OF CONTRACTS § 133(1)(a) (1932)); RESTATEMENT § 138 (suit may be brought either by the promisee or the beneficiary); 25 DAVID K. DEWOLF ET AL., WASHINGTON PRACTICE: CONTRACT LAW AND PRACTICE § 12:5 (2d ed. 2007) (Washington law follows beneficiary categories recognized in the first *Restatement of Contracts*).

■ ¶17 Having argued that the Pleses should have been plaintiffs, Mr. Loshbaugh cannot be heard to complain that they were joined. Their joinder accomplished the legitimate goal of a defendant objecting to the absence of a real party in interest: namely, to bind the real party to the result. Any goal of derailing resolution of a claim on the merits by seizing on a mistake in identifying the proper plaintiff is not one that finds support in the civil rules; it is the type of strategy CR 17(a) was adopted to avoid.

¶18 If the objection and joinder were late, it is a delay for which Mr. Loshbaugh bears responsibility. It cannot be said to have prejudiced him, where the lack of consideration defense he proposed to assert would have been unavailing. We find neither harm nor reversible error in the trial court's order joining the Pleses and recognizing claims by them as well as Plese-Graham.[1]

---

[1] Mr. Loshbaugh also argues on appeal that the trial court erred in permitting joinder of the Pleses because Plese-Graham's failure to name them as plaintiffs amounted to inexcusable neglect. He did not raise this argument below, so we ordinarily would not consider it. RAP 2.5; *John Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 780, 819 P.2d 370 (1991). We may decline to address an argument under RAP 2.5(a) sua sponte. RAP 12.1(b); *State v. Kirkpatrick*, 160 Wn.2d 873, 880 n.10, 161 P.3d 990 (2007). It would not be well-taken in any event. The question of inexcusable neglect is considered in the context of CR 15(c), which addresses when the addition of a party should be allowed to relate back to the date of the original pleading for statute of limitations purposes. CR 15(c); *Stansfield v. Douglas County*, 146 Wn.2d 116, 122, 43 P.3d 498 (2002); *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 173, 744 P.2d 1032, 750 P.2d 254 (1987). Relation back is not an issue in this case.

## II

¶19 Mr. Loshbaugh next argues that summary judgment on his alleged personal payment obligation was improper in light of his affidavit stating he never agreed to execute a personal note, only a corporate note. He also argues that even if Plese-Graham had demonstrated a verbal agreement by him personally to reimburse Plese-Graham's payment to the subcontractor, the statute of frauds would bar its enforcement.

¶20 We review an order granting summary judgment de novo. *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). Summary judgment is proper if no genuine issue of material fact remains and the moving party is entitled to a judgment as a matter of law. CR 56(c). We view all facts in the light most favorable to the nonmoving party. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005). Summary judgment is appropriate only if reasonable persons could reach but one conclusion from all the evidence. *Id.* We may affirm summary judgment on any ground supported by the record. *Estep v. Hamilton*, 148 Wn. App. 246, 256, 201 P.3d 331 (2008), *review denied*, 166 Wn.2d 1027 (2009).

¶21 Disputes over the existence of oral contracts are generally not appropriate for summary judgment because they depend on an understanding of surrounding circumstances, the intent of the parties, and the credibility of witnesses. *Duckworth v. Langland*, 95 Wn. App. 1, 6-7, 988 P.2d 967 (1998), *review denied*, 138 Wn.2d 1002 (1999). If a dispute exists with respect to the terms of an alleged oral contract, summary judgment is not appropriate. *Id.* Generally, whether there has been mutual assent to the terms of a contract is a question of fact. *Ford v. Trendwest Resorts, Inc.*, 146 Wn.2d 146, 162, 43 P.3d 1223 (2002); *Sea-Van Invs. Assocs. v. Hamilton*, 125 Wn.2d 120, 126, 881 P.2d 1035 (1994).

¶22 The parties' affidavits directly conflict as to whether Mr. Loshbaugh ever agreed to deliver a personal promissory note to reimburse Plese-Graham for its payment to the subcontractor. Mr. Plese's own affidavit in support of summary judgment stated that by August 19, Mr. Loshbaugh had asked that the promissory note be modified to substitute Loshbaugh & Sons as the payor. The affidavit acknowledges that Mr. Plese complied and sent a replacement note. At the summary judgment hearing, the lawyer for Plese-Graham and the trial court may have misrecalled the timing of the second note; both appear to have assumed that Mr. Loshbaugh's assurances on October 5 and 19 that he had signed "the note" necessarily referred to the personal note because the corporate note had not yet been prepared. *But compare* CP at 53, 108 *with* RP at 6-8, 20-21. In support of his motion for reconsideration, Mr. Loshbaugh presented additional evidence, admitted in the mandatory arbitration proceeding, that the corporate note had been in circulation as early as July.

¶23 The electronic communications in October relied upon by Plese-Graham and the trial court establish only that Mr. Loshbaugh agreed to sign one of the two promissory notes drafted by Mr. Plese, but do not indicate which one. Viewed in the light most favorable to Mr. Loshbaugh, the evidence would support a finding that he agreed to sign only the corporate note. The trial court's grant of summary judgment in favor of Plese-Graham was improper to the extent it relied upon its conclusion that there was no genuine issue of fact as to the personal character of the agreed obligation. Because there is clearly a factual dispute as to that issue, we need not reach Mr. Loshbaugh's statute of frauds defense or the several arguments offered by Plese-Graham in response.

## III

¶24 Mr. Loshbaugh next argues that the trial court erred when it granted summary judgment on the alternative

rationale that he was jointly and severally liable for Losh-
baugh & Sons' obligation to Plese-Graham by virtue of RCW
23B.02.040, which provides:

> All persons purporting to act as or on behalf of a corporation,
> knowing there was no incorporation under this title, are jointly
> and severally liable for liabilities created while so acting except
> for any liability to any person who also knew that there was no
> incorporation.

This provision of the Washington Business Corporation Act,
Title 23B RCW, falls under the chapter entitled "Incorpora-
tion," is entitled "Liability for preincorporation transac-
tions," and is most commonly applied to cases of promoters
incurring liabilities before incorporation. Nonetheless, in
*Equipto Division Aurora Equipment Co. v. Yarmouth*, 134
Wn.2d 356, 370, 950 P.2d 451 (1998), our Supreme Court
carefully considered the legislative history of the provision,
prior corporation acts and common law, and determined
that the statute also applies to "postdissolution transac-
tions that violate the statutory restriction of winding up the
corporate business." Summary judgment was appropriate,
then, if Plese-Graham demonstrated that there was no
genuine issue of material fact as to the statute's application
to Mr. Loshbaugh.

¶25 As related in *Equipto*, a properly incorporated com-
pany has yearly responsibilities to maintain its corporate
status, including paying license fees and filing annual
reports. A failure to do so is grounds for administrative
dissolution of the corporation by the secretary of state.
"Once dissolved, the corporation 'continues its corporate
existence but may not carry on any business except that
necessary to wind up and liquidate its business and affairs
under RCW 23B.14.050 and notify claimants under RCW
23B.14.060.'" *Equipto*, 134 Wn.2d at 362 (quoting former
RCW 23B.14.210(3) (1989)).

¶26 In analyzing RCW 23B.02.040, *Equipto* found the
first element of a claim—that a defendant " 'purport[s] to

act as or on behalf of a corporation' "—to be straightforward. 134 Wn.2d at 364. The second—" 'knowing there was no incorporation under this title' "—"present[ed] the greatest difficulty" because a corporation continues to exist during the period it is winding up and conditionally even longer, inasmuch as it can be reinstated nunc pro tunc. *Id.* at 365. Despite this theoretical quandary over when there is no longer incorporation, the court found that case law and legislative history support using dissolution as the time when a risk of individual liability begins to attach. It held that "[a]ll knowing, unauthorized acts after dissolution potentially incur personal liability." *Id.* at 366. As to the "knowledge" required, the court was persuaded by legislative history and decisions from other state courts that for a defendant to have joint and several liability, he or she must have had actual knowledge that the corporation was dissolved. *Id.* at 371. Finally, the court recognized that the exception provided by the statute denies joint and several recovery to any plaintiff who itself knew, at the time of the transaction relied upon, that the corporation was dissolved. *Id.* at 364-65.

¶27 Plese-Graham seeks to impose joint and several liability for Mr. Loshbaugh's actions on behalf of the company not only following its October 1 dissolution, but following its earlier "*de facto* dissolution," CP at 102, which Plese-Graham, relying on *Black's Law Dictionary*, defines as "[t]he termination and liquidation of a corporation's business."[2] Yet in construing the meaning of "knowing there was no incorporation" for postincorporation transactions in *Equipto*, the Supreme Court found the end of incorporation to arise at the earliest upon dissolution. Plese-Graham identifies no Washington case discussing the de facto dissolution of a corporation or authority from any other state that would support de facto dissolution as triggering individual liability. Imposing joint and several liability before

---

[2] BLACK'S LAW DICTIONARY 507 (8th ed. 2004).

administrative dissolution is irreconcilable with the language of RCW 23B.02.040 and its construction in *Equipto*.

¶28 With this understanding of RCW 23B.02-.040 in mind, Mr. Loshbaugh demonstrated issues of material fact that were disputed or as to which Plese-Graham made no showing of the absence of an issue of material fact. First, the parties dispute whether Mr. Loshbaugh purported to act on behalf of Loshbaugh & Sons after its October 1 dissolution. Viewing the evidence in the light most favorable to Mr. Loshbaugh, his only act as or on behalf of Loshbaugh & Sons was an agreement made before October 1. While Plese-Graham and the court rely on the October communications, those communications can be construed to refer to acts on behalf of the corporation that had taken place at earlier times. Second, and assuming Mr. Loshbaugh is determined by the trier of fact to have acted on behalf of the company after October 1, the summary judgment submissions did not make a threshold showing that Mr. Loshbaugh had contemporaneous actual knowledge that Loshbaugh & Sons had been administratively dissolved. Perhaps Plese-Graham could have presented such evidence, but given its reliance on de facto dissolution as triggering individual liability it did not. The summary judgment burden is initially on the moving party to show the absence of any issue of material fact. *Briggs v. Nova Servs.*, 166 Wn.2d 794, 811, 213 P.3d 910 (2009).

¶29 Third, if Mr. Plese was aware that Loshbaugh & Sons was dissolved at the time of the alleged post-dissolution action of Mr. Loshbaugh, then Plese-Graham is not entitled to enforce joint and several liability. Here again, because Plese-Graham's motion did not focus on events after October 1, it did not make a threshold showing that Plese-Graham's principals were unaware, themselves, of the dissolution. Fourth, if any post-October 1 action taken on behalf of the company by Mr. Loshbaugh was a "winding up" transaction as he contends, then joint and several liability does not arise. Only after the trier of fact deter-

mines whether Mr. Loshbaugh acted on behalf of the company following dissolution can it determine whether his actions constituted "business . . . appropriate to wind up and liquidate its business and affairs." RCW 23B.14.050(1). Given these several disputed or unaddressed material facts, summary judgment was inappropriate.

¶30 As an alternative basis for summary judgment imposing personal liability for a company obligation, Plese-Graham argues that it demonstrated Mr. Loshbaugh's intentional use of the company to violate or evade a duty, giving rise to an action to pierce the corporate veil. *See, e.g., Morgan v. Burks,* 93 Wn.2d 580, 585, 611 P.2d 751 (1980). The trial court did not address this issue, but we may affirm summary judgment on any ground supported by the record.

¶31 The "duty owed" theory of corporate disregard has two components. First, the corporate form must have been intentionally used to violate or evade a duty; second, disregard must be "necessary and required to prevent unjustified loss to the injured party." *Id.* at 587. The first element requires an abuse of the corporate form. *Meisel v. M&N Modern Hydraulic Press Co.,* 97 Wn.2d 403, 410-11, 645 P.2d 689 (1982). Such abuse typically involves " 'fraud, misrepresentation, or some form of manipulation of the corporation to the stockholder's benefit and creditor's detriment.' " *Id.* at 410 (quoting *Truckweld Equip. Co. v. Olson,* 26 Wn. App. 638, 645, 618 P.2d 1017 (1980)). The wrongful corporate activities required as the second element must actually harm the party seeking relief so that disregard is necessary. *Id.* Intentional misconduct must be the cause of the harm that is avoided by disregard. *Id.*

¶32 Plese-Graham's evidence offered in support of its motion would not support summary judgment on this alternate ground. Its affidavits and exhibits do not clearly establish either the requisite wrongdoing or unjustified loss. The financial reverses and ultimate demise of Loshbaugh & Sons left Plese-Graham unpaid, but "harm

alone does not create corporate misconduct." *Meisel*, 97 Wn.2d at 410-11. A corporate entity should not be disregarded solely because it cannot meet its obligations. *See Morgan*, 93 Wn.2d at 589-90. As recognized by the *Meisel* court, "The purpose of a corporation is to limit liability." 97 Wn.2d at 411.

¶33 Since summary judgment against Mr. Loshbaugh was inappropriate under each of the theories advanced by Plese-Graham, the orders and judgment must be reversed and the case remanded for trial.

## IV

¶34 We finally address Mr. Loshbaugh's assignment of error to fees and costs assessed against him by the trial court and the parties' requests for an award of fees on appeal.

¶35 Mr. Loshbaugh assigns error to the trial court's award of attorney fees to Plese-Graham under RCW 7.06.060(1), which provides in relevant part that "[t]he superior court shall assess costs and reasonable attorneys' fees against a party who appeals the [mandatory arbitration] award and fails to improve his or her position on the trial de novo." Mr. Loshbaugh appears to argue that regardless of the outcome of this appeal, no fees or costs could be awarded by the trial court for proceedings below where he established that the Pleses were the real party in interest and, as a result, that nothing was owed Plese-Graham. His argument overlooks the facts that while the Pleses were joined based on his contention that they were the real party in interest, Mr. Plese's testimony was that the purpose of the proposed notes was "to essentially reimburse Plese-Graham" and that no signed note was ever delivered. CP at 53. Absent execution of any note, the promise breached was not the promise contained in the note but the promise to deliver a note—a promise made to Mr. Plese acting for Plese-Graham. At least that is how the court appears to

have viewed it, having entered judgment in favor of only Plese-Graham. CP at 166-68. Even if judgment had been entered in favor of the Pleses individually, where the assessment of fees and costs turned on whether *Mr. Loshbaugh* improved his position, it would be an unreasonable reading of RCW 7.06.060(1) to decline to assess fees and costs where, following trial de novo, he remained liable for the same principal amount of damages and additional prejudgment interest, with the only difference being that he owes the amount to a different, affiliated party. The joinder of the Pleses is no basis for reversing the assessment of fees and costs.

¶36  In light of our decision that summary judgment was improper, however, any assessment of fees and costs under RCW 7.06.060 was premature. *See Home Realty Lynnwood, Inc. v. Walsh*, 146 Wn. App. 231, 242, 189 P.3d 253 (2008). The fee and cost award must be reversed on that basis.

¶37  Both parties request attorney fees on appeal under RCW 4.84.330,[3] but here again, the requests are premature. No party has yet prevailed on the merits in this action. *See Home Realty*, 146 Wn. App. at 242 (reversal of summary judgment renders "determination of the prevailing party . . . premature" for purposes of contractual attorney fee award).

¶38  We reverse the trial court's orders and judgment and remand for trial proceedings consistent with this opinion.

Kulik, C.J., and Brown, J., concur.

---

[3] RCW 4.84.330 provides, "In any action on a contract or lease entered into after September 21, 1977, where such contract or lease specifically provides that attorneys' fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he or she is the party specified in the contract or lease or not, shall be entitled to reasonable attorneys' fees in addition to costs and necessary disbursements." We quote the current version of this statute since the Laws of 2011, chapter 336, section 131 amendments were not substantive.