[No. 30070-6-III.    Division Three.    October 30, 2012.]

THE FEDERAL DEPOSIT INSURANCE CORPORATION, *as Receiver, Respondent*, v. URIBE, INC., ET AL., *Appellants*.

*Robert M. Seines*, for appellants.

*Kevin H. Breck* (of *Winston Cashatt, Lawyers*), for respondent.

¶1 KULIK, J. — Uribe Inc. was a pipeline construction company owned by Michael and Helen Uribe (collectively Uribe). In the spring of 2007, Uribe and Bank of Whitman (Bank)[1] were operating under a written finance agreement with the goal of enabling Uribe to bid on a pipeline construction project. The Bank filed a replevin action in 2010 when Uribe defaulted on two earlier loans. Uribe counterclaimed, alleging the Bank had separately and orally agreed to provide an irrevocable line of credit (ILOC)

---

[1] On August 5, 2011, the Bank was closed by the Washington Department of Financial Institutions, and the Federal Deposit Insurance Corporation (FDIC) was appointed as the receiver. On October 31, 2011, FDIC was substituted as respondent as the real party in interest. Clerk's Ruling, *Fed. Deposit Ins. Corp. v. Uribe*, No. 30070-6-III (Wash. Ct. App. Oct. 31, 2011). In the interest of readability, we use the term "Bank."

to secure a performance bond. The Bank eventually found another bank to provide a line of credit acceptable to the surety.

¶2 The Bank moved for summary judgment, arguing that the alleged oral contract lacked consideration, lacked definite material terms, and, in any event, was fully performed by the Bank. The court granted the Bank's summary judgment motion. Uribe appeals. We affirm the summary judgment in favor of the Bank because the alleged oral agreement lacked consideration and definite material terms and, therefore, failed to contractually bind the parties.

## FACTS

¶3 Uribe Inc. was a pipeline construction company headquartered in Pasco, Washington. In the spring of 2007, Uribe and the Bank were operating under a written finance agreement with the goal of enabling Uribe to bid on a pipeline construction project. The Bank provided the financing for the project.

¶4 Uribe asserts that in addition to the parties' written financing agreement, the parties also had a separate oral contract. Uribe asserts that under this oral agreement, the Bank agreed to provide an ILOC or other adequate financing to enable Uribe to obtain the performance bond required for the construction project. The Bank maintains that there was no oral agreement. In their briefing, the parties agree that any alleged agreement between the parties related to the line of credit, not to the performance bond.

¶5 The Bank asserts that there was no oral agreement. However, the Bank explains that the Bank attempted to post a first ILOC but was declined by the surety because of the Bank's poor financial condition. The Bank then continued its efforts and eventually succeeded in finding another bank whose letter of credit satisfied the surety. Uribe

believes the Bank's additional efforts were the result of the parties' oral contract. And Uribe contends the delay in procuring the bond prevented Uribe from starting the project on time and caused Uribe to lose money on the project.

¶6 The Bank commenced the underlying replevin proceedings in July 2010 when it filed a complaint for possession of personal property. The Bank alleged that Uribe was in default on the construction loan that is the subject of this appeal and on an earlier loan. Two months later, the trial court issued an order awarding possession of personal property to the Bank. Uribe ceased to operate after the Bank replevied its equipment in the underlying lawsuit.

¶7 The only remaining claim in this action is Uribe's counterclaim. The counterclaim alleges that the Bank and Uribe had an oral agreement requiring the Bank to provide an ILOC to secure the performance bond. Uribe contends that the oral contract between Uribe and the Bank required the Bank to provide an ILOC, not a performance bond, as is stated in some of the pleadings.

¶8 Uribe alleges in its counterclaim that in 2006, the Bank obtained an appraisal for real property owned by Uribe. After concluding there was an abundance of equity, the Bank agreed to finance a pipeline construction project between Uribe and Intermountain Gas. After reviewing bid specifications, the Bank allowed Uribe to bid and verbally agreed to provide an ILOC to allow Uribe to obtain a performance bond as required by the bid specifications.

¶9 In 2006, the Bank obtained an appraisal for real property owned by Uribe. The Bank acknowledges that Uribe bid a job with Intermountain Gas and that the Uribes' bonding company refused to accept the line of credit offered by the Bank.

¶10 The Bank then made additional efforts to assist Uribe in finding a performance bond. Specifically, the Bank offered to pledge a certificate of deposit of $1,000,000 to

Intermountain Gas in place of a bond. But Intermountain refused to accept the offer.

¶11 Uribe maintains that the Bank's affidavits from Craig Conklin and Jim Hui contradict the Bank's answer and reply in that the affidavits state that the Bank never agreed to obtain an ILOC for the project here. This view is mistaken; these affidavits state that the Bank did not agree to provide a performance bond, only an ILOC. The affidavits indicate that at the beginning, Mr. Uribe told both men that Mr. Uribe would be able to obtain a performance bond. Later, after Uribe bid on the project, Mr. Uribe informed the Bank that Uribe needed a performance bond and could not get one without assistance. These affidavits also state that Mike Uribe "repeatedly affirmed" that Uribe would have no problem procuring a bond on its own.

¶12 The declaration of Mike Uribe contradicts the affidavits submitted by Mr. Conklin and Mr. Hui. Mr. Uribe states that he had a verbal agreement with the Bank to help him obtain an ILOC because the Bank had previously made similar arrangements for a 2002 project. Mr. Uribe also states that Mr. Conklin's and Mr. Hui's statements that he repeatedly told them he could obtain the performance bond on his own were false.

¶13 The court granted the Bank's motion for summary judgment. This appeal follows.

## ANALYSIS

¶14 An order of summary judgment is proper only if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. CR 56(c). On review of an order of summary judgment, facts and reasonable inferences are considered in the light most favorable to the nonmoving party; questions of law are reviewed de novo. *McNabb v. Dep't of Corr.*, 163 Wn.2d 393, 397, 180 P.3d 1257 (2008).

¶15 The nonmoving party avoids summary judgment when it "set[s] forth specific facts which sufficiently rebut

the moving party's contentions and disclose the existence of a genuine issue as to a material fact." *Meyer v. Univ. of Wash.*, 105 Wn.2d 847, 852, 719 P.2d 98 (1986). Thus, the nonmoving party may not rely on speculative or argumentative assertions that unresolved factual issues remain. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). Summary judgment will be denied if the reviewing court is required to consider an issue of credibility. *Riley v. Andres*, 107 Wn. App. 391, 398, 27 P.3d 618 (2001).

■■ ¶16 A contract requires an offer, acceptance, and consideration. *Kuest v. Regent Assisted Living, Inc.*, 111 Wn. App. 36, 50, 43 P.3d 23 (2002) (quoting *Bulman v. Safeway, Inc.*, 144 Wn.2d 335, 351-52, 27 P.3d 1172 (2001)). The terms of a contract must be sufficiently definite that a court can " 'fix exactly the legal liability of the parties.' " *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 178, 94 P.3d 945 (2004) (quoting *Sandeman v. Sayres*, 50 Wn.2d 539, 541, 314 P.2d 428 (1957)). A contract must be supported by consideration to be enforceable. *Id.*

■■ ¶17 Issues of mutual assent are expressed by an offer and acceptance. *Id.* When an issue arises related to mutual assent to the contract, the issue is generally regarded as an issue of fact. *Plese-Graham, LLC v. Loshbaugh*, 164 Wn. App. 530, 541, 269 P.3d 1038 (2011). However, a question of fact may be determined as a matter of law where reasonable minds could reach but one conclusion. *Ruff v. County of King*, 125 Wn.2d 697, 703-04, 887 P.2d 886 (1995) (quoting *Hartley v. State*, 103 Wn.2d 768, 775, 698 P.2d 77 (1985)).

¶18 Uribe argues that summary judgment is improper here because the disagreements between Uribe and the Bank are issues of fact that must be tried before a jury. Specifically, Uribe argues that summary judgment is improper because there are issues of fact between the parties as to mutual assent.

¶19 As noted, mutual assent is expressed by offer and acceptance. Even if we assume there is a question related to offer and acceptance, this court need not address mutual assent because Uribe fails to present any facts or disputed facts regarding consideration. Because Uribe cannot show that the contract was supported by consideration, summary judgment was proper. *See Keystone*, 152 Wn.2d at 178.

¶20 Uribe argues that consideration was not needed because the parties had a preexisting contractual relationship. But the existence of a preexisting relationship does not excuse the consideration requirement. *Blinka v. Wash. State Bar Ass'n*, 109 Wn. App. 575, 590, 36 P.3d 1094 (2001) (citing *Multicare Med. Ctr. v. Dep't of Soc. & Health Servs.*, 114 Wn.2d 572, 584, 790 P.2d 124 (1990)).

¶21 Furthermore, even if we assume there was an oral contract between the parties, the contract would be unenforceable because it also lacks definite material terms.

¶22 The terms of a contract must be sufficiently definite. "If an offer is so indefinite that a court cannot decide just what it means and fix exactly the legal liability of the parties, its acceptance cannot result in an enforceable agreement." *16th St. Investors, LLC v. Morrison*, 153 Wn. App. 44, 55, 223 P.3d 513 (2009).

¶23 The scope of performance under any alleged oral contract here is unknown. Significantly, the counterclaim presumes that timeliness was a material term. However, despite Uribe's complaints as to timeliness, Uribe fails to provide facts supporting this argument. Uribe asserts that it suffered damages because of the Bank's tardiness in obtaining the ILOC. However, the counterclaim does not allege any facts suggesting the parties agreed on or even discussed a deadline for obtaining the ILOC.

¶24 Uribe refers to the various disputed facts and asserts that such disagreement precludes summary judgment. However, the fact that there are disagreements between the parties does not mean that these disagree-

ments are related to material facts. Although the parties disagree on some facts, there are sufficient facts supporting summary judgment in favor of the Bank based on lack of consideration and lack of definite terms. We need not address the Bank's argument that even if there was an oral contract, the Bank fully performed.

¶25 We affirm the trial court's grant of summary judgment in favor of the Bank. Because Uribe is not the prevailing party, we deny its request for attorney fees.

KORSMO, C.J., and SIDDOWAY, J., concur.

After modification, further reconsideration denied January 8, 2013.