## PAUL TOLK *v.* EDWARD H. WILLIAMS
### (AC 22358)

Lavery, C. J., and Bishop and Hennessy, Js.

Argued December 4, 2002—officially released March 18, 2003

*Thomas L. Kanasky, Jr.*, for the appellant (plaintiff).

*Robert P. Hanahan*, with whom, on the brief, was *James T. Ryan*, for the appellee (defendant).

*Opinion*

LAVERY, C. J. In this action to recover real estate commissions, the plaintiff, Paul Tolk, appeals from the judgment of the trial court, rendered in favor of the defendant, Edward H. Williams, in accordance with the report of an attorney trial referee (referee). On appeal, the plaintiff claims that the court improperly accepted the report because the referee incorrectly concluded that the listing agreement was unenforceable pursuant to General Statutes (Rev. to 1989) § 20-325a.[1] We reverse the judgment of the trial court.

---

[1] General Statutes (Rev. to 1989) § 20-325a provides in relevant part: "(a) No person who is not licensed under the provisions of this chapter, and who was not so licensed at the time he performed the acts or rendered the services for which recovery is sought, shall commence or bring any action in any court of this state . . . to recover any commission, compensation or other payment in respect of any act done or service rendered by him, the doing or rendering of which is prohibited under the provisions of this chapter except by persons duly licensed under this chapter.

"(b) No person, licensed under the provisions of this chapter, shall commence or bring any action . . . as set forth in subsection (a), unless such acts or services were rendered pursuant to a contract or authorization from the person for whom such acts were done or services rendered. To satisfy the requirements of this subsection any such contract or authorization shall (1) be in writing, (2) contain the names and addresses of all the parties thereto, (3) show the date on which such contract was entered into or such authorization given, (4) contain the conditions of such contract or authorization and (5) be signed by the owner or an agent authorized to act on behalf of the owner only by a written document executed in the manner provided for conveyances in section 47-5, and by the real estate broker or his authorized agent. . . ." Section 20-325a was not amended during the period of the agreement at issue in this case.

The record reveals the following facts and procedural history, which are relevant to the plaintiff's appeal. On November 14, 1995, the plaintiff commenced this action to recover real estate commissions in connection with a certain parcel of real estate in Southbury known as Hunters Ridge Estates. In his amended complaint, the plaintiff alleged that on October 25, 1989, the Alan Fischer Companies, Inc., doing business as Fischer Commercial (Fischer Commercial),[2] entered into a written agreement with the defendant, the owner and developer of the subject property, giving Fischer Commercial the exclusive right to sell lots on the property from October 25, 1989, to October 24, 1992. The plaintiff also alleged that when the agreement was signed, he was a licensed real estate salesperson working for Fischer Commercial and that he signed the exclusive listing agreement as Fischer Commercial's agent. The plaintiff further alleged that Fischer Commercial assigned its interest in the listing agreement to him and that he is entitled to commissions on all the lots that the defendant sold during the term of the agreement.

The court referred the matter to a referee, who heard the case on April 25, 1997. At the hearing, the plaintiff testified and also called Alan M. Fischer as a witness. The defendant did not call any witnesses to testify on his behalf. On September 9, 1997, the referee submitted his report, which included, inter alia, the following findings of fact and conclusions of law: "[The] plaintiff and defendant entered into several agreements in 1988 and 1989. . . .

"[The] plaintiff's (exhibit D), dated October 25, 1989, is an exclusive agency listing agreement between the defendant and [the plaintiff] (broker) from October 25,

---

[2] On April 25, 1997, the referee granted the plaintiff's motion to amend his amended complaint to change the name Fischer Commercial Industrial Real Estate, Inc., to the Alan Fischer Companies, Inc., doing business as Fischer Commercial.

1989 to October 24, 1992, signed by [the plaintiff] as authorized listing agent for Fischer Commercial as broker agency name. By assignment of contract dated April 24, 1997 . . . Fischer Commercial assigned to [the plaintiff] all its interest in the attached exclusive agency listing agreement dated October 25, 1989, between it and [the defendant]. . . .

"Alan M. Fischer, a witness for the plaintiff, testified that he did not know or recall if any sales or commissions were paid to his firm between October 25, 1989, and October 24, 1992. He did not know if the plaintiff had any agreement with the defendant. He did not recall if he knew of the agreement, plaintiff's (exhibit D) . . . . He testified that he agreed to assign the contract in 1995 (exhibit J) for purposes of suit. . . . No consideration was paid for this assignment. Apparently, plaintiff made no claim for commissions due from the defendant prior to the filing of this action. . . .

"Exhibit D is the final exclusive agency listing agreement for a period from October 25, 1989, to October 24, 1992, wherein [the plaintiff] is listed as 'broker' and also listed as 'designated Realtor or authorized representative.' . . . The plaintiff introduced no testimony that he was a licensed real estate broker or real estate salesman. Exhibits prior to exhibit D refer to the plaintiff as a 'real estate agent.'[3] General Statutes § 20-

---

[3] In his report, the referee also found, in relevant part, the following facts: "[The] plaintiff's (exhibit A), dated April, 1988, purports to be an employment agreement in which the plaintiff is described as a duly licensed real estate agent and sets forth the basis of compensation for the plaintiff's services and advice. [The] plaintiff's (exhibit B), dated February 2, 1988, is an exclusive right to sell listing contract between the defendant and Remax Real Estate Marketing Co., effective from February 2, 1988, to February 2, 1989, signed by [the plaintiff] as authorized representative. There is no claim for lots sold under this listing. . . .

"[The] plaintiff's (exhibit C), dated October 5, 1988, is an exclusive right to sell listing contract between the defendant and Fischer Commercial, effective from October 5, 1988, to October 4, 1989, signed by [the plaintiff] as authorized representative."

311 (1) and (2). General Statutes § 20-325a (b) requires that any contract or authorization be signed 'by the real estate broker or his authorized agent.' "

On the basis of those findings, the referee recommended judgment for the defendant. On December 3, 1997, the plaintiff filed a motion to correct the referee's report, which the referee denied. Thereafter, the plaintiff filed exceptions and objections to the referee's report pursuant to Practice Book §§ 439 and 440, now § 19-14, and the defendant filed a motion for judgment on the referee's report. On March 30, 1998, the court overruled the plaintiff's exceptions and objections and granted the defendant's motion; however, on September 14, 1998, it vacated its ruling.

On May 14, 2001, the court heard argument on the plaintiff's exceptions and objections to the referee's report. As to the plaintiff's exceptions, the court found, inter alia, that although the referee improperly failed to find that (1) "the evidence [established] that Fischer Commercial was a licensed real estate broker in 1989," (2) "[t]he plaintiff presented evidence that during the relevant time period, he was a licensed salesperson and that he was authorized to enter into listing agreements on behalf of Fischer Commercial" and (3) "the evidence [supported] the plaintiff's contention that he testified that he was a real estate sales agent," the absence of those facts did not materially affect the referee's recommendation. The court, therefore, overruled the plaintiff's exceptions.

As to the plaintiff's primary objection to the referee's report, namely, that the referee's conclusion with regard to the validity of the exclusive listing agreement was not properly reached in light of the subordinate facts, the court stated: "The plaintiff testified that he completed the exclusive listing agreement. In doing so in paragraph one, the plaintiff stated that he was the bro-

ker. In the signature portion of the document, the plaintiff listed Fischer Commercial as the broker, and he signed the document as Fischer's authorized listing agent and as the designated Realtor or authorized Realtor. The plaintiff did testify about the role he played in the listing agreement and explained that he was acting on behalf of Fischer and did not fill in the document correctly when he named himself as the broker. . . . The attorney trial referee expressed his view on this issue at trial and stated: 'Well, this is the exclusive right, a listing agreement from [the defendant] to [the plaintiff], broker, your right to sell. And you've signed this Fischer Commercial as broker. And you're the authorized listing agent. But this is not an agreement between . . . [the defendant] and Fischer Commercial. It's an agreement between [the defendant] and you. . . . As I read this document.' . . . The court has found no material error in the referee's report, nor has the court found any other 'sufficient reasons why the report should not be accepted.' " (Citation omitted.)

The court, therefore, overruled the plaintiff's objections to the referee's report and rendered judgment for the defendant, as recommended by the referee. This appeal followed. Additional facts will be set forth as necessary.

The plaintiff claims that the court improperly accepted the referee's report because the referee incorrectly concluded that the listing agreement was unenforceable pursuant to § 20-325a (b). We agree.

We begin with the applicable standard of review. "[A] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. . . . [Our Supreme Court] has articulated that

attorney trial referees and factfinders share the same function . . . whose determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment by the court. . . .

"The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Shapero* v. *Mercede*, 262 Conn. 1, 5–6, 808 A.2d 666 (2002).

Our Supreme Court, however, has specifically stated that "[w]hether a particular listing agreement complies with § 20-325a (b) is a question of law." *New England Land Co., Ltd.* v. *DeMarkey*, 213 Conn. 612, 623, 569 A.2d 1098 (1990). Our review of the plaintiff's claim, therefore, is plenary, and we must decide whether the court's acceptance of the referee's conclusion that the listing agreement was unenforceable pursuant to § 20-325a (b) is legally and logically correct and finds support in the facts that appear in the record. See *Dow & Condon, Inc.* v. *Muros North Ltd. Partnership*, 69 Conn. App. 220, 225, 794 A.2d 554 (2002).

With those principles in mind, we now address the plaintiff's claim. "The right of a real estate broker to recover a commission is dependent upon whether the listing agreement meets the requirements of § 20-325a (b)." (Internal quotation marks omitted.) *Rapin* v. *Nettleton*, 50 Conn. App. 640, 647, 718 A.2d 509 (1998). Section 20-325a (b) requires that the listing agreement: "(1) be in writing, (2) contain the names and addresses of all the parties thereto, (3) show the date on which

such contract was entered into or such authorization given, (4) contain the conditions of such contract or authorization and (5) be signed by the owner . . . *and by the real estate broker or his authorized agent.*" (Emphasis added.) "It is well established that the requirements of § 20-325a (b) are mandatory rather than permissive and that the statute is to be strictly construed." *McCutcheon & Burr, Inc.* v. *Berman,* 218 Conn. 512, 520, 590 A.2d 438 (1991). "A broker who does not follow the mandate of [§ 20-325a (b)] does so at his peril." (Internal quotation marks omitted.) *Real Estate Auctions, Inc.* v. *Senie,* 28 Conn. App. 563, 568, 611 A.2d 452 (1992).[4]

In the present case, the parties executed the exclusive listing agreement at issue on a printed form that contains the basic terms and conditions to which they agreed. In the body of the agreement, blank spaces were provided for specifications such as the owner's name, the broker's name, the description of the subject property, the period of time for which the agreement would be effective and the commission rate. In the signature block, blank spaces were provided for the owner's signature and address, the broker's name and address, the authorized listing agent and the designated Realtor or authorized representative.

It is undisputed that the printed form was filled out properly in every respect, except that the plaintiff

---

[4] We note that, "[i]n 1994, the legislature relaxed the standard of strict compliance with [General Statutes] § 20-325a with respect to several of its provisions. While a written agreement is still strictly required, number 94-240 of the 1994 Public Acts amended § 20-325a such that a real estate broker may recover a sales commission if the broker 'has substantially complied with subdivisions (2) to (6), inclusive, of [§ 20-325a (b)] and it would be inequitable to deny recovery.' [General Statutes § 20-325a (c)]." *Dow & Condon, Inc.* v. *Muros North Ltd. Partnership,* supra, 69 Conn. App. 226. "Because the events that form the basis of this action occurred prior to the amendment's effective date of July 1, 1994 . . . we must apply the statute in effect during that time." *M.R. Wachob Co.* v. *MBM Partnership,* 232 Conn. 645, 647 n.1, 656 A.2d 1036 (1995).

entered his name in the blank space provided for the broker's name in the body of the agreement while in the signature block he listed Fischer Commercial as the broker, and signed the document as the authorized listing agent and as the designated Realtor or authorized representative. In his report, the referee interpreted the document as an exclusive listing agreement between the defendant owner and the plaintiff as the broker, signed by the plaintiff as the authorized listing agent for Fischer Commercial. On the basis of that interpretation and the undisputed fact that the plaintiff was not a licensed real estate broker, the referee concluded that the listing agreement was unenforceable because it was not signed by "the real estate broker or his authorized agent," as required by § 20-325a (b) (5).

After a careful review of the record, we are left with the impression that, contrary to the conclusion of the referee, the exclusive listing agreement complied with § 20-325a (b) (5). The record reveals that the plaintiff signed the exclusive listing agreement not as a broker, as determined by the referee, but as Fischer Commercial's authorized agent. The plaintiff's uncontradicted testimony was that he executed the listing agreement on Fischer Commercial's behalf and that he mistakenly entered his own name in the blank space provided for the broker's name in the body of the agreement. Moreover, the plaintiff presented evidence that during the relevant time period, he was a licensed salesperson working for Fischer Commercial and that he was authorized to enter into listing agreements on behalf of Fischer Commercial, which was a licensed real estate broker. Significantly, Fischer, the president of Fischer Commercial, testified with respect to the plaintiff's authority to enter into the subject agreement as follows: "Any agent that operates as a salesperson under the auspices of my brokerage license has the authority to enter into a listing agreement for the purposes of selling

that real estate. This [agreement] is an example of that. [The plaintiff] had the authority to sign on behalf of the company under the auspices of my brokerage license."[5]

Although the plaintiff did enter his name in the blank space provided for the broker's name in the body of the listing agreement, in the signature block, he correctly listed Fischer Commercial as the broker, and signed the document as the authorized listing agent and as the authorized representative of Fischer Commercial. Section 157 of the Restatement (Second) of Agency provides in relevant part that a "written instrument, in one portion of which there is a manifestation that the agent is acting only for the principal, is interpreted as the instrument of the principal and not of the agent, although in other portions of the instrument . . . the agent's name appears without designation." Restatement (Second), Agency § 157, p. 373 (1958). "If [the agent] has made . . . the fact that [he is acting in a representative capacity] in any portion of the instrument, the fact that it is not equally clear in other parts is immaterial, and it is not necessary that he should constantly appear throughout the instrument to act only as a representative. . . ." Id., § 157, comment (a), p. 373.[6]

---

[5] We note that the referee's finding that Fischer "did not recall if he knew of the agreement, plaintiff's (exhibit D)" is clearly erroneous. Fischer clearly testified that he knew of the subject listing agreement from the time it was executed. For instance, on cross-examination by the defendant's attorney the following colloquy occurred:

"[Defendant's Counsel]: Were you aware that this plaintiff's exhibit D was in existence from its very beginning, that is, on or about October 25 of 1989?

"[The Witness]: Was I aware that it existed?

"[Defendant's Counsel]: Yes, sir.

"[The Witness]: Yes."

Although Fischer did testify that he did not recall whether he was "made privy to the terms" of "a side contractual agreement" between the plaintiff and the defendant, that testimony was not in reference to the plaintiff's exhibit D.

[6] We note that "[n]o part of a document is necessarily more important than any other part for the purpose of determining the parties thereto" and, therefore, "the entire document, including the heading, body, and signature,

We conclude that the record conclusively demonstrates that the plaintiff signed the exclusive listing agreement in a representative capacity on behalf of Fischer Commercial and that the agreement complied with § 20-325a (b) (5). The court, therefore, improperly accepted the referee's report because the referee incorrectly concluded that the listing agreement was unenforceable pursuant to § 20-325a (b) (5).[7]

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

is considered . . . ." 1 Restatement (Second), supra, § 155, comment (a), p. 371.

[7] The defendant claims that even if the exclusive listing agreement complies with General Statutes § 20-325a (b) (5), the court's decision, nevertheless, is correct and should be affirmed because the plaintiff "did not render any brokerage services pursuant to the contract, as required by [§ 20-325a]," and Fischer Commercial's assignment to the plaintiff of all its interest with respect to the exclusive listing agreement did not entitle the plaintiff to enforce the agreement. Because the court accepted the referee's conclusion that the listing agreement was unenforceable pursuant to § 20-325a (b) (5), it never reached the issues of whether the agreement was otherwise unenforceable or whether the plaintiff, as the assignee, was entitled to enforce the agreement. We therefore remand the case to the trial court for a determination of the remaining issues in the case.