YELLOW BOOK SALES AND DISTRIBUTION
COMPANY, INC. *v.* DAVID VALLE
(AC 32588)

DiPentima, C. J., and Bear and Schaller, Js.

Argued October 12, 2011—officially released January 17, 2012

*Thomas L. Kanasky, Jr.*, for the appellant (plaintiff).

*Anthony J. Natale*, with whom were *Shannon Philipp Butler* and, on the brief, *Brian L. Wolinetz*, for the appellee (defendant).

*Opinion*

SCHALLER, J. The plaintiff, Yellow Book Sales & Distribution Company, Inc. (Yellow Book), appeals from the summary judgment rendered by the trial court in favor of the defendant, David Valle. On appeal, Yellow Book claims that the court incorrectly concluded that the agreement between the parties was rendered unenforceable by the statute of frauds, General Statutes § 52-550.[1] For the reasons explained below, we affirm the judgment of the trial court.

The record contains the following undisputed facts and procedural history which are relevant to this appeal. Yellow Book is a Delaware corporation engaged in the business of advertising. The defendant was the president of Moving America of CT, Inc. (Moving America), and, before that company ceased operating in 2006, entered into multiple contracts with Yellow Book on its behalf.

Each of these contracts was executed through the use of a standard form containing the following provisions.[2] Paragraph 1 provides in relevant part: "Customer and [p]ublisher . . . agree that [p]ublisher will publish advertising in the [d]irectories and/or provide the [i]nternet [s]ervices, in accordance with the terms and conditions of this agreement. . . ." Subsection A of paragraph 6 reads: "Customer agrees to pay the amounts listed on the reverse side of this agreement for print advertising in the [d]irectories and/or [i]nternet

___

[1] General Statutes § 52-550 provides in relevant part: "(a) No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged . . . (2) against any person upon any special promise to answer for the debt, default or miscarriage of another . . . ."

[2] Throughout these contracts the term "publisher" is used to refer to Yellow Book, the term "customer" is used to refer to Moving America and the term "signer" is used to refer to the defendant.

[s]ervices." The final provision of the contract, subsection F of paragraph 15, reads: "The signer of this agreement does, by his execution personally and individually undertake and assume the full performance hereof including payments of the amounts due hereunder."

The parties completed the signature provision of this form contract in a substantially similar manner on each occasion.[3] The words "Moving America" appeared on the first line. A signature reading "David Valle, President" was placed on the second line.[4] Finally, on the third line, the words "David Valle, President" were handwritten along with the date.[5]

On May 27, 2009, Yellow Book commenced the present action against the defendant in his individual capacity, pursuant to the individual guarantees contained within these contracts. In its complaint, Yellow Book alleged that Moving America had since dissolved and that the defendant was individually liable to it for $28,808, the balance remaining unpaid on the account, plus interest and attorney's fees. On September 29, 2009, the defendant filed an answer denying the substantive allegations of the complaint and alleging the statute of frauds as a special defense. On October 23, 2009, Yellow

---

[3] The signature provision of the form contract appears as follows:

THIS IS AN ADVERTISING CONTRACT BETWEEN YELLOW BOOK AND

_____ and
Print Company Name

X_____
Authorized Signature Individually and for the Company   ( Read clause 15F on reverse side)   Title

_____
Print Signer's Name        SS # (required for new accounts or new signer)        Date

[4] We note that on the agreements dated July 20, 2005, the signature of the defendant appears on the third line while the second line was left blank. This variation, however, does not affect our analysis.

[5] Despite the instructions printed beneath the third line, the defendant always included the designation "President" and never printed his social security number on this line.

Book filed a reply denying this special defense. On February 1, 2010, the defendant filed a motion for summary judgment, claiming that the imposition of liability was foreclosed by the statute of frauds as a matter of law. On April 19, 2010, Yellow Book filed an objection to the defendant's motion along with its own cross motion for summary judgment. On May 7, 2010, the defendant filed an objection to Yellow Book's cross motion for summary judgment.

On July 23, 2010, the court issued a memorandum of decision granting the defendant's motion for summary judgment. Specifically, the court concluded that Yellow Book had alleged "[a] promise by the defendant to answer for the debt of Moving America" that "falls squarely within" the statute of frauds. The trial court further concluded that the written contracts presented to it were ambiguous as to whether the defendant was a party to the contract in his individual capacity and that the agreements therefore were unenforceable, as a matter of law, pursuant to the statute of frauds. This appeal followed.

On appeal, Yellow Book claims that the court incorrectly concluded that (1) the promises alleged by Yellow Book constitute agreements to answer for the debt of Moving America and (2) the language contained within the various written memoranda failed to satisfy the statute of frauds.[6] We disagree.

We begin our analysis by setting forth the applicable standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted

---

[6] Yellow Book also claims in its statement of issues that the court erred in denying its cross motion for summary judgment. Because this issue is not discussed in Yellow Book's brief, however, we consider it to be abandoned. See *Naier* v. *Beckenstein*, 131 Conn. App. 638, 641 n.1, 27 A.3d 104 (2011).

show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant [a party's] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Brooks* v. *Sweeney*, 299 Conn. 196, 210, 9 A.3d 347 (2010).

I

Yellow Book's first claim is that the court erred in granting the defendant's motion for summary judgment because the obligation undertaken by the defendant was not a promise to answer for the debt of Moving America but, rather, an original undertaking not governed by the statute of frauds.[7] We disagree.

The statute of frauds requires that a promise made to answer for the debt of another be expressed in a

---

[7] The defendant argues that Yellow Book's failure to address this distinction in its trial court brief prevents us from considering the applicability of the statute of frauds on appeal. The court granted the motion for summary judgment after concluding explicitly that the statute of frauds applied to the present case as a matter of law. Under such circumstances, we cannot conclude that addressing this issue on appeal would constitute an ambuscade of the trial court judge. See *Rowe* v. *Superior Court*, 289 Conn. 649, 662–63, 960 A.2d 256 (2008) ("The trial court appears to have understood and rejected [the argument presented on appeal] . . . . Under such circumstances, we cannot conclude that the plaintiff has ambushed the trial court by seeking reversal of an issue that he had failed to raise at trial."); see also *Morgan* v. *Hartford Hospital*, 301 Conn. 388, 394 n.7, 21 A.3d 451 (2011).

writing and be signed by the party against whom enforcement is sought. General Statutes § 52-550 (a) (2). "Fundamentally the distinction between a contract which falls within the condemnation of [§ 52-550 (a) (2)] and one which does not is that the former is a collateral undertaking to answer in case of a default on the part of the obligor in the contract, upon whom still rests the primary liability to perform, whereas in the latter the obligation assumed is a primary one that the contract shall be performed." (Internal quotation marks omitted.) *Kerin Agency, Inc.* v. *West Haven Painting & Decorating, Inc.*, 38 Conn. App. 329, 331–32, 660 A.2d 882 (1995). "The question as to whom credit was given, which is determinative of whether the agreement was an original undertaking not within the statute, is one of fact." (Internal quotation marks omitted.) Id., 332; *Bartolotta* v. *Calvo*, 112 Conn. 385, 388–89, 152 A. 306 (1930); *Equipment Distributors, Inc.* v. *Adams*, 33 Conn. Sup. 528, 530, 358 A.2d 367 (1976).

In *Kerin Agency, Inc.* v. *West Haven Painting & Decorating, Inc.*, supra, 38 Conn. App. 330, this court addressed a case in which an insurance company sought to recover unpaid premiums pursuant to a personal guarantee made by the president of the insured corporation. In that case, the defendant argued that enforcement of the agreement was barred by the statute of frauds because it constituted a contract to answer for the debt of the corporation. Id. In considering whether the statute of frauds applied, we stated: "The testimony at trial established that the plaintiff extended credit to [the corporation] on the basis of [the individual defendant's] personal guarantee and a review of [his] personal financial statement" and, accordingly, affirmed the trial court's conclusion that the defendant's undertaking was original rather than collateral in nature and, therefore, not governed by the statute of frauds. Id., 332–33.

In the present case, the defendant submitted evidence to the trial court in support of his motion for summary judgment indicating that Yellow Book extended credit solely to Moving America and that, unlike *Kerin Agency, Inc.*, Yellow Book was not induced to act by the strength of the defendant's individual credit. Specifically, the deposition transcript of William Dest, the sales agent responsible for Moving America's account, contains the following colloquy:

"Q. And Moving America was the company that the credit was extended to, correct?

"A. Yes.

"Q. Credit wasn't extended to [the defendant], correct?

"A. No, it was extended probably to, at least the business. If the current credit report was done, it was the business that the credit was for, as far as the business, but that's the paperwork that was filled out."[8]

There is no evidence in the record indicating that this fact is in dispute.[9] Absent such a dispute, the court correctly concluded that Yellow Book sought recovery pursuant to a collateral promise by the defendant to answer for the debt of Moving America. Such an

---

[8] The following colloquy also appears in the transcript of this deposition:
"Q. Okay, to reiterate a few points, when Yellow Book extended credit, your understanding is they were extending it to Moving America, correct?
"A. Yes."

[9] Although Yellow Book is correct to note that the form agreement contains a provision affording it the right to check the defendant's personal credit history, and extend a line of credit to him individually at its discretion, the record contains no evidence indicating that these rights were exercised in the present case. On the contrary, the undisputed evidence contained within the record demonstrates that the defendant never provided his personal social security number to Yellow Book on the front of the contract and that, despite this omission, Yellow Book provided advertising services to Moving America.

agreement, as the court noted in its memorandum of decision, falls "squarely within" the statute of frauds.

## II

Yellow Book's second claim is that the various written agreements contained within the record are not ambiguous as to whether the defendant is a party to the contract in his individual capacity, and, therefore, the court erred in concluding that enforcement was barred by the statute of frauds. We disagree.

"The statute of frauds requires that the essential terms and not every term of a contract be set forth therein. . . . The essential provisions of a contract are the purchase price, *the parties*, and the subject matter for sale. . . . In order to be in compliance with the statute of frauds, therefore, an agreement must state the contract with such certainty that its essentials can be known from the memorandum itself, without the aid of parol proof . . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) *SS-II, LLC* v. *Bridge Street Associates*, 293 Conn. 287, 294, 977 A.2d 189 (2009). When the statute of frauds applies, summary judgment in favor of the defendant is proper when an essential provision of the contract is ambiguous. See *Carta* v. *Marino*, 13 Conn. App. 677, 681, 538 A.2d 1091 (1988).

In order for the statute of frauds to be satisfied in the present case, the record must contain a writing that states, without ambiguity, that the defendant is a party to an agreement in his individual capacity.[10] Although Yellow Book argues that the addition of the phrase "[a]uthorized [s]ignature [i]ndividually and for the

[10] In addressing this issue, we note that "[n]o part of a document is necessarily more important than any other part for the purpose of determining the parties thereto and, therefore, the entire document, including the heading, body, and signature, is considered . . . ." (Internal quotation marks omitted.) *Tolk* v. *Williams*, 75 Conn. App. 546, 555 n.6, 817 A.2d 142 (2003).

[c]ompany ([r]ead clause 15F on reverse side)" beneath the defendant's signature removes any ambiguity from the contract, such language cannot be read in isolation. The parties do not dispute that the defendant signed his name only once on each agreement and that the signature was always appended with the corporate designation "President." Moreover, many of the other provisions contained within these contracts indicate that the agreement was formed between Yellow Book and Moving America. Specifically, paragraph 1 of the form contract states: *"Customer and [p]ublisher agree* that [p]ublisher will publish advertising in the [d]irectories . . . ." (Emphasis added.) Likewise, subsection A of paragraph 6 states: *"Customer agrees* to pay the amounts listed on the reverse side . . . ." (Emphasis added.) These additional facts demonstrate that the question of whether the defendant was a party to these agreements in his individual capacity is, at least, unclear. Because these writings are subject to more than one interpretation, we agree with the court that they are ambiguous as to the identity of the parties to the contract and, therefore, do not satisfy the statute of frauds. Accordingly, we conclude that the court properly granted the defendant's motion for summary judgment.

The judgment is affirmed.

In this opinion the other judges concurred.