******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

YELLOW BOOK SALES AND DISTRIBUTION
COMPANY, INC. *v.* DAVE VALLE
(SC 18956)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald and Vertefeuille, Js.

*Argued October 22, 2013—officially released February 11, 2014*

*Patrick L. Kenney*, pro hac vice, with whom was *Jeffrey R. Babbin*, for the appellant (plaintiff).

*Anthony J. Natale*, with whom were *Shannon N. Butler* and, on the brief, *Brian L. Wolinetz*, for the appellee (defendant).

*Opinion*

EVELEIGH, J. In this certified appeal, the plaintiff, Yellow Book Sales and Distribution Company, Inc., appeals from the judgment of the Appellate Court affirming the trial court's grant of summary judgment in favor of the defendant, Dave Valle.[1] *Yellow Book Sales & Distribution Co.* v. *Valle*, 133 Conn. App. 75, 84, 35 A.3d 1082 (2012). The dispositive issue in this appeal is whether the defendant is personally obligated under a contract with the plaintiff.[2] On appeal to this court, the plaintiff claims that the Appellate Court should not have affirmed the trial court's grant of summary judgment because the contract unambiguously identified the defendant as a party in his individual capacity and imposed a primary obligation on the defendant to provide full performance, thus rendering the statute of frauds, General Statutes § 52-550, inapplicable.[3] We agree with the plaintiff and, accordingly, reverse the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following relevant facts and procedural history: "[The plaintiff] is a Delaware corporation engaged in the business of advertising. The defendant was the president of Moving America of CT, Inc. (Moving America), and, before that company ceased operating in 2006, entered into [a contract] with [the plaintiff] on its behalf.

"[The contract] was executed through the use of a standard form containing the following provisions. [Clause] 1 provides in relevant part: 'Customer and [p]ublisher . . . agree that [p]ublisher will publish advertising in the [d]irectories and/or provide the [i]nternet [s]ervices, in accordance with the terms and conditions of this agreement. . . .' [Clause 6 (A)] reads: 'Customer agrees to pay the amounts listed on the reverse side of this agreement for print advertising in the [d]irectories and/or [i]nternet [s]ervices.' The final provision of the contract, [clause 15 (F)], reads: 'The signer of this agreement does, by his execution personally and individually undertake and assume the full performance hereof including payments of the amounts due hereunder.'

"The parties completed the signature provision of this form contract [in the following manner].[4] The words 'Moving America' appeared on the first line. A signature reading 'David Valle, President' was placed on the second line. Finally, on the third line, the words 'David Valle, President' were handwritten along with the date.

"On May 27, 2009, [the plaintiff] commenced the present action against the defendant in his individual capacity, pursuant to the [alleged] individual [guarantee] contained within [the contract]. In its complaint, [the plaintiff] alleged that Moving America had since dissolved and that the defendant was individually liable to it for $28,808, the balance remaining unpaid on the

account, plus interest and attorney's fees. On September 29, 2009, the defendant filed an answer denying the substantive allegations of the complaint and alleging the statute of frauds as a special defense. On October 23, 2009, [the plaintiff] filed a reply denying this special defense. On February 1, 2010, the defendant filed a motion for summary judgment, claiming that the imposition of liability was foreclosed by the statute of frauds as a matter of law. On April 19, 2010, [the plaintiff] filed an objection to the defendant's motion along with its own cross motion for summary judgment. On May 7, 2010, the defendant filed an objection to [the plaintiff's] cross motion for summary judgment.

"On July 23, 2010, the court issued a memorandum of decision granting the defendant's motion for summary judgment. Specifically, the court concluded that [the plaintiff] had alleged '[a] promise by the defendant to answer for the debt of Moving America' that 'falls squarely within' the statute of frauds. The trial court further concluded that the [contract] presented to it [was] ambiguous as to whether the defendant was a party to the contract in his individual capacity and . . . therefore . . . unenforceable, as a matter of law, pursuant to the statute of frauds." (Footnotes altered.) Id., 77–79.

Thereafter, the plaintiff appealed from the judgment of the trial court to the Appellate Court. Id., 79. On appeal, the plaintiff "claim[ed] that the [trial] court incorrectly concluded that (1) the [promise] alleged by [the plaintiff] constitute[s] [an agreement] to answer for the debt of Moving America and (2) the language contained within the [contract] failed to satisfy the statute of frauds." Id. The Appellate Court affirmed the judgment of the trial court, concluding that the defendant's obligation was a collateral undertaking to answer for the debt of another in case of default and that, because the contract was ambiguous as to whether the defendant was a party in his individual capacity, the statute of frauds was not satisfied. Id., 80–84. This appeal followed. See footnote 1 of this opinion.

We begin with the appropriate standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Can-*

*tonbury Heights Condominium Assn., Inc.* v. *Local Land Development, LLC*, 273 Conn. 724, 733, 873 A.2d 898 (2005).

The plaintiff claims that the language of the contract at issue unequivocally identifies the defendant, in his individual capacity, as a party to the contract. Specifically, the plaintiff relies on the language below the signature line of the contract, which reads: "[a]uthorized [s]ignature [*i*]*ndividually* and for the [c]ompany ([r]ead clause [15 (F)] on reverse side)." (Emphasis added.) In addition, clause 15 (F) states: "The signer of this agreement does, by his execution *personally and individually undertake and assume full performance hereof* including payments of amounts due hereunder." (Emphasis added.) Finally, the plaintiff notes that immediately above the area of the contract where the defendant affixed his signature, the following language appears: "This is an advertising contract between Yellow Book and [printed company name] and [signature]." The plaintiff claims that all of this language unambiguously identifies the defendant, in his individual capacity, as a party primarily liable on the contract. It further argues that we need not reach the statute of frauds issue if we conclude that the Appellate Court erred in holding, as a matter of law, that the defendant was not a co-obligor under the contract.

In response, the defendant asserts that the various provisions of the contract, when read in conjunction, do not unambiguously identify the defendant as a party to the agreement in his individual capacity. The defendant claims, for example, that the obligations of both Moving America, as the "[c]ustomer," and the plaintiff, as the "[p]ublisher," are fully defined multiple times throughout the contract, while the defendant's obligations are not. The defendant also notes that the terms "[c]ustomer" and "[p]ublisher" are always capitalized in the contract, while the term "signer" is not, and that the defendant appended his signature with the title "[p]resident." The defendant claims that, on the basis of these facts, we should affirm the judgment of the Appellate Court. For the reasons set forth subsequently in this opinion, we agree with the plaintiff.

In the present case, the Appellate Court concluded that the contract was ambiguous as to whether the defendant was a party in his individual capacity. *Yellow Book Sales & Distribution Co.* v. *Valle*, supra, 133 Conn. App. 83–84. In reaching this conclusion, the Appellate Court rejected the plaintiff's argument that the language below the signature line and in clause 15 (F) unambiguously indicate that the defendant was a party to the contract. Id. Instead, the Appellate Court agreed with the defendant that the addition of the word "[p]resident," following the defendant's signature, combined with other provisions in the agreement, indicated that the contract was only between the plaintiff and Moving

America.[5] Id., 84. Having concluded that the contract was ambiguous as to whether the defendant was a party individually to the contract at issue, the Appellate Court held that the statute of frauds rendered the contract unenforceable against the defendant in his individual capacity. Id.

To determine whether the terms of the agreement at issue contain an ambiguity regarding the identity of the parties, we must examine the language of the contract. "When a party asserts a claim that challenges the . . . construction of a contract, we must first ascertain whether the relevant language in the agreement is ambiguous. . . . A contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . Accordingly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact . . . . Moreover, in construing contracts, we give effect to all the language included therein, as the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous." (Internal quotation marks omitted.) *O'Connor* v. *Waterbury*, 286 Conn. 732, 743, 945 A.2d 936 (2008). "[W]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) *Levine* v. *Massey*, 232 Conn. 272, 277–78, 654 A.2d 737 (1995). "It is the general rule that a contract is to be interpreted according to the intent expressed in its language and not by an intent the court may believe existed in the minds of the parties. . . . When the intention conveyed by the terms of an agreement is clear and unambiguous, there is no room for construction. . . . [A] court cannot import into [an] agreement a different provision nor can the construction of the agreement be changed to vary the express limitations of its terms." (Citations omitted; internal quotation marks omitted.) Id., 278. "The circumstances surrounding the making of the contract, the purposes which the parties sought to accomplish and their motives cannot prove an intent contrary to the plain meaning of the language used. . . . It is axiomatic that a party is entitled to rely upon its written contract as the final integration of its rights and duties." (Citation omitted; internal quotation marks omitted.) Id., 279.

In the present case, an examination of the language contained in the written agreement makes it apparent that two portions of the contract, the language surrounding the signature area of the contract and language contained in clause 15 (F), are particularly important to determining whether the defendant is a party to the contract in his individual capacity. The language above and below the signature area of the

contract reads as follows: "This is an advertising contract between Yellow Book and [printed company name] *and* [signature]," beneath of which is included the legend: "[a]uthorized [s]ignature [i]ndividually and for the [c]ompany." (Emphasis added.) Clause 15 (F) of the form contract reads: "The signer of this agreement does, by his execution *personally and individually* undertake and assume the full performance hereof including payments of amounts due hereunder." (Emphasis added.) The plain language of the contract thus expressly identifies the individual signing the contract on behalf of the customer as a party to the contract in an individual capacity with a primary responsibility for payment.

We do not agree with the defendant and the Appellate Court that the fact that the defendant added the handwritten term "[p]resident" to his signature created any ambiguity in the contract as to whether the defendant was himself a party to the contract. Although it is true that, "where the corporation appears as the primary signer, the almost universally accepted and reasonable rule of construction is that where the signature is that of the corporation, and the name or names of one or more of its officers in their official capacity are appended as subscribing agents . . . the corporation will be regarded as the signer and obligor, and the individuals will not be obligated"; *Jacobs* v. *Williams*, 85 Conn. 215, 219, 82 A. 202 (1912); this rule of construction is not appropriate if "other language or the general tenor of the writing indicates a contrary intent." Id. In *Jacobs*, this court concluded that the defendant employees who signed on behalf of their corporation had signed only in their official capacities, primarily because the written agreement relied upon by the plaintiff did not set forth any personal undertaking by the defendants. Id., 219–20. In the present case, however, the language appearing immediately below the defendant's signature and the language contained in clause 15 (F) state clearly that the defendant was individually and personally responsible for the obligations set forth in the contract.

Similarly, the provisions of the contract detailing the rights and obligations of the plaintiff and Moving America do not render ambiguous the plain meaning of the contract, which clearly expresses an intent to create a contract between three parties. Although several clauses within the contract relate primarily to the rights and obligations of the plaintiff and Moving America, clause 15 (F) supplements those provisions by explaining that the defendant, by signing on behalf of Moving America, also assumed, in his individual capacity, full responsibility for payment under the contract.[6] To construe the writings at issue as the defendant urges would effectively read clause 15 (F) out of existence.[7]

Thus, we conclude that the essential terms of the contract between the plaintiff, the defendant, and Moving America are sufficiently identified by the written contract, including the identity of all three parties.[8] As a result, we hold that the defendant assumed a primary obligation to perform the contract with the plaintiff. Put a different way, we conclude that the defendant signed as a co-obligor and, in doing so, incurred a primary obligation, rather than a collateral one. Therefore, we need not address the statute of frauds concerns raised by the defendant.[9]

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to that court with direction to deny the defendant's motion for summary judgment and for further proceedings according to law.

In this opinion the other justices concurred.

[1] We granted the plaintiff's petition for certification to appeal limited to the following question: "Did the Appellate Court properly affirm the trial court's grant of summary judgment?" *Yellow Book Sales & Distribution Co. v. Valle*, 304 Conn. 922, 41 A.3d 661 (2012).

[2] We note that, over the course of different years, the plaintiff asked the defendant to execute, in writing, the same form contract each year. These contracts are identical in all relevant respects. For the sake of expediency, we refer to these writings collectively as the "contract" throughout this opinion.

[3] The plaintiff also claims that the Appellate Court should not have affirmed the trial court's grant of summary judgment in favor of the defendant because the contract unambiguously identified the defendant as a party in his individual capacity, thus rendering the contract in compliance with the statute of frauds. Because we conclude that the contract imposed a primary obligation on the defendant, we do not address this claim. See footnote 9 of this opinion.

[4] The signature provision of the form contract appears as follows:

THIS IS AN ADVERTISING CONTRACT BETWEEN YELLOW BOOK AND

_____ and
Print Company Name

X_____
Authorized Signature Individually and for the Company  ( Read clause 15F on reverse side)    Title

_____
Print Signer's Name        SS # (required for new accounts or new signer)       Date

[5] Specifically, the Appellate Court opinion points to clause 1 of the contract, which states that "[c]ustomer and [p]ublisher agree that [p]ublisher will publish advertising in the [d]irectories," and clause 6 (A) of the contract, which states that "[c]ustomer agrees to pay the amounts listed on the reverse side . . . ." (Emphasis omitted; internal quotation marks omitted.) *Yellow Book Sales & Distribution Co.* v. *Valle*, supra, 133 Conn. App. 84.

[6] At oral argument, the defendant argued that clause 15 (F) was also inconsistent with clause 15 (A) of the contract, which reads: "[t]he individual signing this agreement on behalf of [c]ustomer represents and warrants that he or she is authorized to sign as an owner, officer, partner, or employee of [c]ustomer and that he or she is empowered to bind [c]ustomer to the terms and conditions contained herein." We do not consider these clauses to be inconsistent with one another. Rather, clause 15 (A) indicates that the signer is an agent of the company and has authority to sign on its behalf in a representative capacity, and clause 15 (F) signifies that, additionally, the signer is assuming responsibility for full performance of the contract. Under Connecticut contract law, it is possible for an agent to obligate both himself and the principal on whose behalf he is acting with only one signature, so long as other language found in the contract expresses such an intent. See *Jacobs* v. *Williams*, supra, 85 Conn. 219.

[7] The defendant asserts that courts in other jurisdictions, along with at least one trial court in Connecticut, have found similar contract language to be ambiguous. See, e.g., *Yellow Book Sales & Distribution Co.* v. *All In One Construction*, *LLC*, Superior Court, judicial district of Stamford-

Norwalk, Docket No. CV-10-6003588-S (October 21, 2011) (refusing to grant summary judgment in favor of plaintiff, finding issue of material fact existed as to whether individual defendants intended to "pay [the defendant's] bills and whether there was a mutual meeting of the minds with [the plaintiff] on this issue"); see also *Warren-Connolly Co.* v. *Saphin*, 283 App. Div. 391, 393, 128 N.Y.S.2d 272 (1954) (finding that single clause indicating individual defendant intended to assume individual liability deemed insufficient because defendant not identified as party in contract and court determined that individual defendant signed contract only in representative capacity on behalf of corporation); *Salzman Sign Co.* v. *Beck*, 10 N.Y.2d 63, 67, 176 N.E.2d 74, 217 N.Y.S.2d 55 (1961) (finding similar clause in contract to be insufficient for purposes of statute of frauds "without some direct and explicit evidence of actual intent"); *Yellow Book of New York*, *L.P.* v. *Platt*, Docket No. 31073/02, 2003 N.Y. Misc. LEXIS 112, *10–14 (N.Y. Sup. February 3, 2003) (finding similar contractual language ambiguous in part because various judicial opinions have contradicted one another as to whether language is ambiguous); *Topline Automotive Engineering*, *Inc.* v. *Arney*, Docket No. C.A. 66, 1989 Tenn. App. LEXIS 28, *2–3 (Tenn. App. January 20, 1989) (finding no personal obligation because individual defendant signed contract only once, in his official capacity, in situation where contract had two signature lines). We do not find these cases to be sufficiently persuasive to warrant departing from the settled rule espoused in *Jacobs* v. *Williams*, supra 85 Conn. 219, which makes clear that an individual who signs in a representative capacity on behalf of a company may also be held individually responsible for the company's obligations so long as such an intent is clearly expressed by language in the written contract.

[8] We do not decide today whether it would be unconscionable to enforce contractual terms similar to those set forth in clause 15 (F) in a form contract between two parties with disparate bargaining power. The defendant has not raised unconscionability as a defense in this action, nor has either party given this court any reason to suspect that the defendant, the president of Moving America. is not a sophisticated party.

[9] We need not decide whether the contract satisfies the statute of frauds because the defendant assumed a primary obligation by signing the contract and, therefore, the statute of frauds does not apply. See, e.g., *Otto Contracting Co.* v. *S. Schinella & Son*, *Inc.*, 179 Conn. 704, 710–11, 427 A.2d 856 (1980); *Bartolotta* v. *Calvo* 112 Conn. 385, 389–91, 152 A. 306 (1930). In the present case, the statute of frauds would need to be satisfied only if we were to conclude that the defendant's obligation represented a collateral undertaking. See *Bartolotta* v. *Calvo*, supra, 389.