JEFFREY NAIER ET AL. *v.* ROZ-LYNN
BECKENSTEIN ET AL.
(AC 30148)

Lavine, Beach and Pellegrino, Js.

---

Argued February 10—officially released September 27, 2011

*David A. Lavenburg,* for the appellants (plaintiffs).

*Michael P. Berman,* with whom was *Suzanne LaPlante,* for the appellee (named defendant).

*Jeffrey J. Mirman,* for the appellee (defendant Arthur Beckenstein).

*Opinion*

BEACH, J. The principal proposition presented in this appeal is whether a beneficiary of a trust has standing to maintain an action claiming impropriety on the part of a third party who settled a prior case with the trustee. On the facts presented in this matter, we hold that the beneficiary does not have such standing.

The plaintiffs, Jeffrey Naier and Andrea Naier, both individually and in their capacities as co-trustees of the Eleanor Naier revocable trust, appeal from the judgment of the trial court dismissing their complaint against the defendants, Roz-Lynn Beckenstein, individually and in her capacity as executrix of the estate of Robert Beckenstein and co-trustee of the Robert Beckenstein amended and restarted trust; Seymour Flaster, trustee; and Arthur Beckenstein, individually and in his capacity as trustee of the Henry Beckenstein trust. The

plaintiffs claim that the court erred in dismissing their complaint for lack of standing.[1] We affirm the judgment of the trial court.

The record reveals the following relevant factual allegations and procedural history. Henry Beckenstein and his brother, Louis Beckenstein, were equal partners in certain real estate projects, including Tolland Enterprises and Wintonbury Associates (partnerships). Upon the death of Louis Beckenstein, his interest in the partnerships devolved to a trust. His wife, Rose Beckenstein, held a power of appointment giving her discretion to direct assets, and the Hartford National Bank & Trust Company was trustee.

In October, 1983, Rose Beckenstein created a trust agreement (Rose trust). The Rose trust stated that after the death of Rose Beckenstein, Rose Beckenstein's and Louis Beckenstein's daughter, Eleanor (Beckenstein) Naier, would have the power to appoint or to distribute for the benefit of Eleanor Naier's children any part of the principal of the trust estate "except closely held business interests . . . ."[2] The Rose trust further provided that the trustee was authorized to retain any business interest[3] in the trust estate. Following the death

[1] The plaintiffs also claim in their statement of issues that the court erred in denying their motion for reargument. Because the plaintiffs' brief does not meaningfully analyze this issue, we deem it abandoned. "[I]ssues raised in the defendant's preliminary statement of issues which were not briefed are considered abandoned." (Internal quotation marks omitted.) *Thomas* v. *West Haven*, 249 Conn. 385, 391 n.11, 734 A.2d 535 (1999), cert. denied, 528 U.S. 1187, 120 S. Ct. 1239, 146 L. Ed. 2d 99 (2000).

[2] Paragraph 3 (c) provides: "Anything herein to the contrary notwithstanding, after the death of the Donor [Rose Beckenstein], the Donor's said daughter [Eleanor Naier] shall have the power, exercisable by Will, to appoint all or any part of the principal of the Trust Estate, except closely held business interests, in trust or otherwise, to or for the benefit of her issue, or any of them, in such proportions and amounts as she shall, in her sole judgment, determine. The Trustee shall pay over and distribute, as soon as practicable, any part so appointed in accordance with the terms of such appointment."

[3] The interests of the trust in the partnerships were to be administered solely by the trustee, which specifically was directed to be advised by Henry

of Rose Beckenstein in January, 1985, the Rose trust became irrevocable, and Henry Beckenstein and the Rose trust each held a 50 percent interest in the partnerships.

In 1996, following the death of Henry Beckenstein and his wife, their two sons, Robert Beckenstein and Arthur Beckenstein, became co-executors of Henry Beckenstein's estate. At this time, then, the Rose trust and the estate of Henry Beckenstein each held a 50 percent interest in the partnerships.

In 1997, Eleanor Naier and her two children, Jeffrey Naier and Andrea Naier, commenced an action alleging a breach of fiduciary duty and violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., against Fleet Bank, the trustee of the Rose trust,[4] and Robert Beckenstein and Arthur Beckenstein, individually and as co-executors of the estate of Henry Beckenstein. The Naiers claimed generally that the Beckensteins, with the acquiescence of Fleet Bank, improperly failed to render a fair share of partnership profit to the Rose trust. In June, 2000, Robert Beckenstein died and his wife, Roz-Lynn Beckenstein, was appointed executrix of his estate and was named as a defendant in the 1997 action. In settlement of the 1997 action, Eleanor Naier, Jeffrey Naier and Andrea Naier, in August, 2000, entered into a settlement and release agreement with Fleet Bank, Roz-Lynn Beckenstein, the executrix of the estate of Robert Beckenstein, and Arthur Beckenstein individually and as executor of the estate of Henry Beckenstein. Pursuant to the "global" settlement agreement, Roz-Lynn Beckenstein and Arthur Beckenstein made a payment of more than $6 million to the Rose trust as consideration

Beckenstein and specified successors according to paragraph 9 of the Rose trust. The intention of the settlor quite clearly was to exclude the beneficiaries from the business operations.

[4] Fleet Bank was the successor in interest to Hartford National Bank.

for the transfer of the Rose trust's interest in the partnerships to Roz-Lynn Beckenstein in her capacity as executrix of the estate of Robert Beckenstein and to Arthur Beckenstein individually. Roz-Lynn Beckenstein and Arthur Beckenstein thereafter sold the partnership's properties. Upon Robert Beckenstein's death, Arthur Beckenstein had become the sole executor of Henry Beckenstein's estate.

In 2007, the plaintiffs initiated the present action against the defendants, notwithstanding the 2000 settlement agreement, regarding their conduct in the prior litigation. The plaintiffs alleged fraudulent misrepresentation, breach of the covenant of good faith and fair dealing, breach of fiduciary duties, aiding and abetting, a CUTPA violation, unjust enrichment, constructive trust and a claim under General Statutes § 45a-368.

The defendants filed a motion to dismiss for lack of standing. The court determined that as beneficiaries, as opposed to trustees, of the Rose trust, the plaintiffs lacked standing to assert the claims set forth in their complaint. The court granted the defendants' motion and dismissed the plaintiffs' complaint. This appeal followed.

The standard of review applicable to a motion to dismiss is well established. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting [denial] of the motion to dismiss will be de novo. . . . A motion to dismiss tests . . . whether . . . the court is without jurisdiction. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light . . . . In this regard, a court must

take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Citation omitted; internal quotation marks omitted.) *Keller* v. *Beckenstein*, 122 Conn. App. 438, 442–43, 998 A.2d 838, cert. granted on other grounds, 298 Conn. 921, 5 A.3d 486 (2010).

"It is well established that [a] party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim. . . . Standing is the legal right to set judicial machinery in motion. . . . [T]he court has a duty to dismiss, even on its own initiative, any appeal that it lacks jurisdiction to hear. . . . Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause. . . . Our review of the question of [a] plaintiff's standing is plenary." (Citations omitted; internal quotation marks omitted.) *Megin* v. *New Milford*, 125 Conn. App. 35, 37, 6 A.3d 1176 (2010).

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless [one] has, in an individual or representative capacity, some real interest in the cause of action . . . . Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all the members of the community as a whole. Second, the party claiming aggrievement must successfully establish that

the specific personal and legal interest has been specially and injuriously affected by the decision. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) *Gold* v. *Rowland*, 296 Conn. 186, 207, 994 A.2d 106 (2010).

"Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy. . . . The requirement of directness between the injuries claimed by the plaintiff and the conduct of the defendant also is expressed, in our standing jurisprudence, by the focus on whether the plaintiff is the proper party to assert the claim at issue." (Internal quotation marks omitted.) *PNC Bank, N.A.* v. *Kelepecz*, 289 Conn. 692, 705, 960 A.2d 563 (2008).

The gravamen of the plaintiffs' claims in the present action is that the defendants, during the course of the 1997 action, provided the plaintiffs with incorrect and misleading information about the partnerships and the defendants' intentions regarding the partnerships, in which, at that time, the Rose trust and the estate of Henry Beckenstein were equal partners. Under the Rose trust, Eleanor Naier had the power to appoint or to distribute for the benefit of the plaintiffs or either one

of them, the trust property, other than closely held business interests. The plaintiffs were, at most, beneficiaries.

## I

### PLAINTIFFS' STANDING AS BENEFICIARIES

The trustee is the proper party to bring an action against anyone who wrongfully interferes with the interests of the trust. See *Treat* v. *Stanton*, 14 Conn. 445, 454–55 (1841) (legal responsibility to bring action exclusive to trustee and must be enforced by trustee). "The trustee's standing to sue arises out of its legal title to the res. See *Palmer* v. *Hartford National Bank & Trust Co.*, 160 Conn. 415, 425, 279 A.2d 726 (1971). The trustee has a title (generally legal title) to the trust property, usually has its possession and a right to continue in possession, and almost always has all the powers of management and control which are necessary to make the trust property productive and safe. Any wrongful interference with these interests of the normal trustee is therefore a wrong to the trustee and gives him a cause of action for redress or to prevent a continuance of the improper conduct. Although the beneficiary is adversely affected by such acts of a third person, no cause of action inures to him on that account.'[5] Bogert, Trusts and Trustees (2d Ed. Rev.) § 869, p. 87." *Second Exeter Corp.* v. *Epstein*, 5 Conn. App. 427, 429–30, 499 A.2d 429 (1985), cert. denied, 198 Conn. 802, 502 A.2d

---

[5] "It has generally been held that a beneficiary cannot sue the parties at law for any harm done his trust estate without first asking his trustee to bring a proper action and receiving a refusal. The reasons of convenience, in the proper administration of trust estates, which underlie this rule, are apparent. This rule is rather strictly enforced as regards actions at law, but not so rigidly regarded in equitable actions. This is especially true where trustees are implicated in the alleged wrong." *Preston* v. *Preston*, 102 Conn. 96, 123, 128 A. 292 (1925). In this case, there is no indication that the beneficiaries asked the trustee to bring suit, and there is no allegation that the trustee is implicated in the alleged wrong.

932 (1986). The Restatement (Second) of Trusts, § 281, states: "(1) Where the trustee could maintain an action at law or suit in equity or other proceeding against a third person if the trustee held the trust property free of the trust, the beneficiary cannot maintain an action at law against the third person, except as stated in Subsection (2). (2) If the beneficiary is in possession of the subject matter of the trust, he can maintain such actions against the third person as a person in possession is entitled to maintain." 2 Restatement (Second), Trusts § 281 (1959). The comment to subsection (1) states: "(a) The interest of the beneficiary of a trust is an equitable interest, and ordinarily is protected by suits in equity rather than by actions at law. . . . (b) . . . If a third person commits a tort with respect to the trust property, the beneficiary, if he is not in possession, cannot maintain an action at law against him. . . . (c) . . . If a contract right is held in trust, the beneficiary cannot maintain an action at law against the promisor. . . . (d) . . . . If a right other than for tort or in contract arises against a third person from the holding of title to the trust property, the beneficiary cannot maintain an action at law to enforce it." (Citations omitted.) Id., § 281, comment on subsection (1).

Accordingly, at the time of the 1997 action, any interest of the Rose trust vis-à-vis the Beckenstein interests had to have been asserted by the trustee, if anyone. If the trustee violated its fiduciary duty, the beneficiaries had standing to bring an action against it.[6]

## II

### PLAINTIFFS' STANDING AS INDIVIDUALS

Recognizing the general principle that only a trustee has standing to maintain an action asserting the trust's

---

[6] In this vein, we note that the 1997 action brought by the plaintiffs included the trustee as a defendant.

interests, the plaintiffs nonetheless argue that they have standing in this action because they in fact were parties to the 1997 action and claim to have been defrauded themselves. Several considerations inform our resolution of this claim. First, in their capacity as beneficiaries of the Rose trust, the plaintiffs lack standing to assert their claims. If any entity was defrauded, it was the trust itself. The plaintiffs do not fall under any exception noted in the Restatement; their complaint contains no allegation that they were in possession of the trust property, nor is such an exception claimed.

Additionally, the language of the Rose trust did not allow the plaintiffs individually to succeed to the partnership property interests. The Rose trust expressly stated in paragraph 3 (c) that "after the death of the Donor [Rose Beckenstein], the Donor's said daughter [Eleanor Naier] shall have the power, exercisable by Will, to appoint all or any part of the principal of the Trust Estate, *except closely held business interests*, in the trust or otherwise, to or for the benefit of her issue . . . ."[7] (Emphasis added.)

The plaintiffs, however, also claim that their standing, as individuals, to bring their present complaint is derived from the settlement of the 1997 action. They argue that they had standing to bring the 1997 action as beneficiaries of the Rose trust because in that action they alleged, inter alia, that the defendant Fleet Bank, the trustee of the Rose trust, breached its fiduciary duty to the beneficiaries of the trust by failing to act in various ways. They contend that the allegations in their present complaint concern the actions of the defendants in misrepresenting partnership information and intentions during the settlement of the 1997 action and, because the plaintiffs were parties to the 1997 action

---

[7] There is no dispute that the partnerships were "closely held business interests."

and signed the settlement agreement, they have standing in the present case to raise claims arising from the settlement agreement to the 1997 action.

We assume for the purpose of this opinion that the plaintiffs had standing to bring the 1997 action. Standing in one action, however, does not necessarily confer standing in another. The present complaint contains allegations that certain actions and representations of the defendants with respect to the partnerships induced the plaintiffs to settle the 1997 action for less money than their interests were worth. The plaintiffs were at most beneficiaries of a trust that was an owner of the partnerships. As discussed previously, the portion of the settlement currently in issue directly concerned the Rose trust, not the plaintiffs; the plaintiffs are not proper parties in the present action. Even if misleading statements had been made to the plaintiffs any injury was to the trust, and the settlement proceeds were transferred to the trust, not to the plaintiffs.[8] See, e.g., *Ganim v. Smith & Wesson Corp.*, 258 Conn. 313, 349, 780 A.2d 98 (2001) ("The question of whether a set of harms suffered by the plaintiff is the direct, or the indirect, remote or derivative, consequence of the defendant's conduct, is not determined, however, simply by the court applying one set of labels or the other to the facts of the case. It is, instead, part of the judicial task, based on policy considerations, of setting some reasonable limits on the legal consequences of wrongful conduct.").

With those considerations in mind, we examine the plaintiffs' claim that the actions by the defendants caused the cash payment for the partnership interest to be less than it should have been. As a result of the global settlement agreement, inter alia, a total payment

---

[8] In the 1997 action, the plaintiffs included Fleet Bank as a defendant. The trustee is not alleged in this action to have engaged in tortious conduct in the settlement of the prior action.

of $6.8 million was made to the Rose trust in consideration of the transfer of the Rose trust's interest in the partnerships to Roz-Lynn Beckenstein and Arthur Beckenstein. Although the settlement was "global," and apparently encompassed assets in addition to the partnerships, the part of the settlement agreement that allegedly was fraudulent directly involved only Fleet Bank, which transferred the partnership interests, and the Rose trust, which was paid cash consideration. Any injury was sustained by the trust, not the plaintiffs directly. The Rose trust conferred to Eleanor Naier the power of appointment, exercisable in her will, "to appoint all or any part of the principal of the trust estate, except closely held business interests . . . to or for the benefit of her issue, or any of them, in such proportions and amounts as she shall, in her sole judgment, determine." At the time of the settlement agreement in 2000, Eleanor Naier was alive and no appointment power had been exercised. In her will, Eleanor Naier, who at the time this action was brought was deceased, appointed all of the assets of the Rose trust to the Eleanor Naier revocable trust, of which the plaintiffs are co-trustees. Even if the plaintiffs could surmount the obstacle that, in general, it is the trustee, not the beneficiary, who has standing to bring suit;[9] their relation to the cash settlement is too remote to confer standing in the present action and ultimately is subject to the same considerations barring standing to beneficiaries.

The plaintiffs further argue that it is undisputed that the Rose trust was terminated and no longer exists, and as a result of this termination, they have standing as beneficiaries to bring the present action. They contend, citing A. Scott, W. Fratcher & M. Ascher, Trusts (5th

[9] It should be observed that the plaintiffs' standing in the 1997 action had to have been premised on the inclusion of the trustee as a defendant. There is no similar path to standing in this case.

Ed. 2008) § 36.2,[10] that, following the termination date of a trust, if the trustee fails to convey or distribute the trust property and enough time has elapsed for the trustee to wind up the trust, then it is permissible to presume such a conveyance by the trustee. They further contend that to the extent that some or all of the claims asserted in the present action otherwise would have belonged to the trustee of the Rose trust, the plaintiffs, as beneficiaries of the Rose trust, are now the owners of those causes of action because ownership of the claims vested in them immediately when the Rose trust was terminated. The plaintiffs appear to suggest that if the trustee owned claims regarding the settlement, but failed expressly to convey them prior to termination, then the beneficiaries now own the claims.

The argument is somewhat ingenious, but ultimately lacks substance. The choate trust property, of course, has been conveyed. "Ownership" of any causes of action related to the partnerships' assets have not vested in the plaintiffs. The Rose trust explicitly stated that the closely held business interests, i.e., the partnerships, could not be appointed to the plaintiffs.[11] Again,

---

[10] Section 36.2 of volume 5 of A. Scott, W. Fratcher & M. Ascher, Trusts (5th Ed. 2008), states: "After the termination date, and once the trustee has had a reasonable opportunity to wind up the trust, the trustee is under a duty to transfer the trust property to those who are beneficially entitled to it. Ordinarily the trustee fulfills this duty by conveying legal title to the appropriate beneficiary. . . . Ordinarily, however, on the termination of a trust, legal title to the trust property does not vest automatically in those entitled to it; instead, legal title remains in the trustee until the trustee conveys or otherwise distributes it. . . . [T]he courts have held, however, that if the trustee fails to make such a conveyance, it is permissible, after the expiration of a sufficiently long period of time, to presume that the trustee has done so."

[11] It perhaps may be possible, as an exercise of logic, that a claim that was inchoate and unknown at the time of termination could pass to a beneficiary. Such a result, in this case would be contrary to the principles of the law of trusts, as set forth previously, and would ignore the remoteness of the plaintiffs' status.

for reasons stated previously, any potential interest is too remote to create standing.

## III

## PLAINTIFFS' STANDING AS TRUSTEES
## OF THE ELEANOR NAIER TRUST

The plaintiffs argue, alternatively, that they have standing as co-trustees of the Eleanor Naier revocable trust. They contend that the Eleanor Naier revocable trust is the "successor in interest" to the Rose trust's interests in the partnerships and, as such, holds the proceeds of the settlement agreement. They state that they are the successors in interest to the partnerships despite the language of the Rose trust which provides that Eleanor Naier's powers of appointment did not include "closely held business interests." They argue that at the time of Eleanor Naier's death, the Rose trust did not have an interest in the partnerships because the interests had been transferred to Roz-Lynn Beckenstein and Arthur Beckenstein as a result of the settlement agreement. All that remained in the Rose trust, according to the plaintiffs, were assets other than the partnerships and claims against the defendants, and Eleanor Naier was not precluded by the language of the Rose trust from appointing the claims arising from the partnership interests by her will to the Eleanor Naier revocable trust.

It is clear from the express language of the Rose trust that Eleanor Naier was precluded from appointing closely held business interests to the plaintiffs. See *Hartford National Bank & Trust Co.* v. *VonZiegesar,* 154 Conn. 352, 359, 225 A.2d 811 (1966) ("[t]he cardinal rule of construction of all trusts . . . is to find and effectuate the intent of the testator or settlor"). Furthermore, as a result of the settlement agreement, the partnership interests, at least insofar as the Rose trust was concerned, were liquidated. The transfer of the cash or

otherwise invested assets to the plaintiffs by Eleanor Naier's will does not necessarily cause the plaintiffs to become successors in interest to claims that may have arisen as a result of the transfer of the partnership interests to cash.[12] If this were so, a beneficiary of a terminated trust, as opposed to a trustee, would have standing to bring a cause of action against anyone who had had dealings with the trustee.[13]

For the foregoing reasons, the court properly granted the defendants' motion to dismiss due to lack of standing.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[12] The trustee of the Rose trust, if it currently existed, would presumably have standing, as would a successor trustee of the Rose trust. The Eleanor Naier trust is an entirely separate entity, though it apparently held assets inherited from the Rose trust. Holding derivative assets does not create a direct interest sufficient to establish standing.

[13] It is of course true that a representative of an estate may pursue a cause of action, within certain limitations, to pursue claims of the deceased. That is not the case here—if the plaintiffs had standing to pursue claims against anyone in the past who may have caused diminution of a trust res, there would be no limit. Standing in the final analysis is a policy determination by the court. See *Ganim* v. *Smith & Wesson Corp.*, supra, 258 Conn. 313.