IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| Mine Holding Trust, | ) | |
| | ) | No. 39623-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Keldon Pavlish and Marianne Pavlish, | ) | PUBLISHED OPINION |
| husband and wife, and David P. Boswell, | ) | |
| and all other persons or parties unknown | ) | |
| claiming any right, title, estate, lien or | ) | |
| interest in the real estate described in the | ) | |
| complaint adverse to Plaintiff's ownership | ) | |
| or any cloud on Plaintiff's title. | ) | |
| | ) | |
| Appellants. | ) | |

FEARING, J. — A byzantine trail of financial swindling, entity obscuring, asset veiling, and litigation finessing leading back two decades and extending into two lawsuits precedes this appeal. The principal question underlying many convoluted issues presented in this appeal is whether a settlor's trust created by a judgment debtor who committed fraud can remove two encumbrances filed on the trust's land. Conversely, must the trust's trustee file the quiet title action to eliminate the encumbrances? The judgment creditors filed the property liens in an attempt to collect the judgment amount. Underlying the principal question are numerous questions concern legal standing, trusts,

real property transfers, collateral estoppel, res judicata, preparation of appeal briefs, and abandonment of assignments of error. The superior court ruled in favor of the trust. We hold that the trust lacks standing to maintain this suit, vacate the order to quiet title, and remand to the superior court for further proceedings. Assuming this court ever reviews the other issues on appeal, we will do so another day.

FACTS

This lawsuit arises from a mendacious real estate transaction between Keldon and Marianne Pavlish, the defendants, and Elden and Joan Sorensen. The Sorensens have committed fraud, not only against the Pavlishes, but also against a bank, if not additional parties. The Sorensens employed many trusts, including plaintiff Mine Holding Trust (MHT), in furtherance of their dishonest dealings. In an earlier lawsuit, the Pavlishes procured a judgment against Elden and Joan Sorensen, if not one or more trusts. As usually happens with judgments against a swindler, the Pavlishes unsuccessfully attempted to collect their judgment, and thus the couple filed a lien on property owned by MHT in Cheney. MHT brings this suit to remove the encumbrances from the Cheney property, which we label the "disputed property." Our narration of the facts begins with the Sorensens' fraudulent transaction with the Pavlishes and ends with a more recent lawsuit involving the two couples.

In February 2000, Elden Sorensen contacted Keldon and Marianne Pavlish about selling the couple a commercial parcel located on First Street in Cheney. We refer to this

property as the "First Street property." The First Street property is not the parcel subject to this lawsuit. Like all accomplished confidence men, Sorensen represented himself as trustworthy and told the Pavlishes he would give them an offer they could not refuse. Sorensen added that he was an experienced real estate agent with broad experience in the sale of real property. Sorensen represented that he controlled the property's owner, Vine Holding Trust (VHT). Sorensen insisted that, with his knowledge, he would prepare the documents necessary for the sale.

Before February 16, 2000, the title to the First Street property identified Elden Sorensen and his wife, Joan, as owners. On February 16, 2000, the Sorensens conveyed the property to VHT by a warranty deed, which deed was recorded on March 14.

On May 8, 2000, VHT, as seller, and Keldon and Marianne Pavlish, as buyers, entered a real estate contract for the sale of the First Street property. Elden Sorensen signed on behalf of VHT. The real estate contract mandated that the Pavlishes pay monthly installments directly to Sorensen. The contract precluded payments to VHT. Neither party recorded the real estate contract.

On May 8, 2000, Keldon and Marianne Pavlish took possession of the First Street property. The Pavlishes thereafter timely tendered each contract payment. On June 14, 2001, VHT reconveyed the First Street property to Elden and Joan Sorensen by warranty deed filed in the Spokane County Auditor's office.

3

In July 2003, Elden and Joan Sorensen applied for a loan with Sterling Savings Bank. The Sorensens offered the First Street property to the bank as collateral for the loan. When applying for the loan, the Sorensens altered and forged the real estate sales contract between Keldon and Marianne Pavlish and VHT and deceitfully presented the sales contract to the bank as a lease. The bank issued a loan for $138,000. The Sorensens duplicitously executed a deed of trust encumbering the First Street property and an assignment of fabricated rents from the property to the bank.

We move now from the First Street property to another Cheney parcel that we have already labeled as the "disputed property." On August 1, 2003, the Sorensen Living Trust (SLT), through trustees Elden and Joan Sorensen, deeded the disputed property to MHT. MHT recorded the deed on August 15, 2003. Also in August 2003, the Sorensens reconveyed, to VHT, the First Street property they had sold to Keldon and Marianne Pavlish on behalf of VHT.

The Sorensens never disclosed to the Pavlishes the loan from Sterling Savings Bank, the deed of trust granted to the bank on the First Street property, or the forged and altered real estate lease that purported to bear the Pavlishes' signatures and that characterized them as tenants of the First Street property. The Sorensens never informed the Pavlishes that title to the First Street property had been conveyed back and forth between VHT and the Sorensens after the execution of the real estate contract between VHT and the Pavlishes.

4

Jack McKinlay and Debra Wilson procured a judgment against Elden and Joan Sorensen in the sum of $86,000. A judgment lien created by the judgment then attached to the First Street property. During the time that Keldon and Marianne Pavlish paid on their real estate contract, the Sorensens' actions resulted in more than $220,000 liens on the First Street property.

In January 2009, Keldon and Marianne Pavlish sought to refinance the First Street property and to lease its premises and business operations. The finance company then ordered a commitment for title insurance. The title commitment informed the Pavlishes that Elden and Joan Sorensen had encumbered the First Street property in favor of Sterling Savings Bank. The title company declined to insure the First Street property. The title company advised the Pavlishes to seek legal counsel. We assume the Pavlishes never procured a refinancing loan.

Keldon and Marianne Pavlish ceased payments on the real estate contract. At that time, they still owed $102,108 on the contract. As a result of the lawsuit, Elden Sorensen alternatively cajoled and intimidated the Pavlishes' tenants at the First Street property to pay rent to Sorensen. The tenants stopped paying rent to the Pavlishes. The Pavlishes incurred legal expenses when bringing an unlawful detainer action to evict the tenants.

In October 2009, Keldon and Marianne Pavlish filed suit against Elden and Joan Sorensen and VHT. We refer to the lawsuit as "the 2009 suit." The suit sought a joint and several judgment against the Sorensens and VHT.

Keldon and Marianne Pavlish joined Sterling Savings Bank, Jack McKinlay, and Debra Wilson as defendants in the 2009 suit. Sterling Savings Bank answered that its secured interest in the First Street property held priority over the Pavlishes' interest in the property. The bank threatened to begin foreclosure of its deed of trust. The Pavlishes settled the dispute with Sterling Savings Bank by paying the bank $35,000 and obtaining an assignment of the bank's note and secured interest.

After trial and on April 25, 2012, Spokane County Superior Court Judge Greg Sypolt entered an order quieting title to the First Street property in favor of Keldon and Marianne Pavlish. Judge Sypolt also entered a judgment totaling $207,621.35 in favor of the Pavlishes and against Elden and Joan Sorensen and VHT.

When entering the judgment in favor of Keldon and Marianne Pavlish, Judge Greg Sypolt entered findings of fact and conclusions of law. One finding of fact reads:

> 2.16 The court further finds that the defendant VHT, an artificial entity, has not now, nor ever had, any lawful existence, and no evidence was introduced at trial purporting to show that VHT lawfully existed; rather, the court finds that VHT was controlled by the defendant Elden Sorensen and manipulated by him as a conduit for myriad fraudulent activities and as a mere instrumentality and alter-ego, and the court further finds, that defendant Elden Sorensen has engaged in a pattern of such misconduct, using this and other artificial entities so controlled and manipulated, including, but not limited to, Partners Alliance LLC, as evidenced by PTE No. 059, and *nine other "arm" entities identified by Mr. Sorensen during his testimony and pursuant to his sworn deposition testimony* (published and admitted into evidence by the court at trial) *including the Rock Trust, Mine Holding Trust, and others*.

6

Clerk's Papers (CP) at 58 (emphasis added). A conclusion of law relevant to this appeal

declares:

> 3.4 The defendant VHT and the defendants Elden and Joan
> Sorensen, husband and wife, and the marital community composed thereof,
> have no separate legal identity, and whether characterized as being alter
> egos, parties acting in concert, or other wise [sic], *the court concludes that*
> *the liability between Sorensen's* [sic] *artificial entities and the individual*
> *Sorensens is joint and several*.

CP at 59 (emphasis added). This language may suggest that Judge Sypolt intended to

enter the judgment against all trust entities related to the Sorensens, including MHT.

The April 25, 2012 judgment does not list the identities of the judgment debtors.

The judgment reads:

> It is hereby ORDERED, ADJUDGED, and DECREED that
> plaintiffs [Keldon and Marianne Pavlish] are awarded judgment in the
> amount of $207,621.35, including damages and litigation-related fees and
> costs.

CP at 64. We hereafter refer to the judgment as the "2012 judgment."

Keldon and Marianne Pavlish had not named MHT as a defendant in the 2009 suit.

Nevertheless, on February 13, 2014, the Pavlishes recorded the 2012 judgment against

the parcel owned by MHT, the disputed property.

On February 27, 2014, Keldon and Marianne Pavlish brought a motion, in the

2009 lawsuit, to add three of the Sorensens' trust entities as defendants: Rock Trust (RT),

MHT, and SLT. The Pavlishes also asked the court to impose the 2012 judgment on

these three trusts. The Pavlishes argued, based on a declaration of a title company

7

officer, that MHT currently held title to the disputed property. They asserted that: (1) in 1996, the Sorensens transferred the property from their individual names to SLT: (2) in 2000, SLT conveyed the property to MHT; (3) in 2001, MHT deeded the disputed property to SLT; and (4) in 2003, SLT reconveyed the property to MHT. The Pavlishes intoned that, unless the court imposed the 2012 judgment on the three trusts, they would need to incur the expense and time of bringing another suit to retry the case against MHT. In response, the Sorensens and MHT argued that res judicata, collateral estoppel, and the statute of limitations barred the relief sought.

On August 15, 2014, Spokane County Superior Court Judge James Triplett entered an order adding RT, MHT, and SLT as defendants in Keldon and Marianne Pavlish's 2009 suit but reserved deciding the question of whether the trusts would be added as judgment debtors to the 2012 judgment. Then, on September 25, 2014, Judge Triplett entered an order imposing the judgment on SLT.

On January 22, 2015, Judge James Triplett declined to impose the 2012 judgment on RT and MHT. The court found that neither Elden nor Joan Sorensen served as trustees nor enjoyed being beneficiaries of RT or MHT. The court also reasoned that Keldon and Marianne Pavlish failed to afford RT and MHT due process when the Pavlishes brought suit against the Sorensens and VHT in 2009. Judge Triplett qualified his ruling by granting the Pavlishes an opportunity to pursue their claims against RT and MHT at trial. As of this date, the Pavlishes have not proceeded to trial against RT and

8

MHT.  In his ruling, Judge Triplett reserved for any trial the Sorensens' and their trusts' defenses of collateral estoppel, res judicata, and statute of limitations.  The court's letter ruling noted that the Pavlishes' counsel, David Boswell, commented that the Pavlishes would not proceed with trial if the court, on motion, did not apply the 2012 judgment to RT and MHT.

On April 24, 2015, Keldon and Marianne Pavlish recorded a partial assignment of judgment against the disputed property with the Spokane County Auditor's Office.  The assignment consigned fifty percent of the 2012 judgment to the Pavlishes' counsel David Boswell.  The assignment held an amended caption naming MHT as a defendant in the 2009 lawsuit, and it stated that the judgment "may hereafter be amended by court order against Mine Holding Trust and/or Rock Trust."  CP at 6.

Also on April 24, 2015, Keldon and Marianne Pavlish filed a special notice request against the disputed property with the Spokane County Auditor.  The notice used an amended caption identifying MHT as a defendant in the 2009 litigation, and it named MHT, the Sorensens, and SLT as grantees of the property.  Both sides agree that the assignment of judgment and notice encumbered the disputed property in favor of the Pavlishes and David Boswell.  We refer to the assignment and the special notice request as "the two encumbrances."

On August 8, 2022, attorney for MHT, Michael Church, called the Pavlishes' counsel, David Boswell.  Church demanded that Boswell immediately remove the two

9

encumbrances from the disputed property. Church threatened a quiet title action. Ten days later, on August 18, Church sent Boswell a letter accusing Boswell of filing the notice and assignment in bad faith. The Pavlishes and Boswell declined to remove the encumbrances.

PROCEDURE

On August 26, 2022, Mine Holding Trust filed this suit to quiet title to the disputed property. MHT named Keldon and Marianne Pavlish and David Boswell as defendants and asserted a claim of constructive fraud against the three. Hereafter, we refer to the three defendants as Pavlish and Boswell.

In September 2022, MHT filed a motion for summary judgment requesting the removal of the two encumbrances from the disputed property. In response, Pavlish and Boswell argued that collateral estoppel established that the 2012 judgment bound MHT and validated a judgment lien and an encumbrance on the disputed property. They also argued that MHT lacked standing or capacity to bring the action and that the 2003 deed, whereby SLT conveyed the property to MHT, was invalid. MHT, in turn, replied that res judicata and collateral estoppel precluded Pavlish and Boswell from asserting MHT's lack of standing.

Within one week before the summary judgment motion hearing, MHT asked Pavlish and Boswell to stipulate to an amended complaint that would substitute Bret Wheeler, a purported trustee of MHT, as a party plaintiff. Pavlish and Boswell declined.

No. 39623-1-III,
*Mine Holding Trust v. Pavlish*

At a January 27, 2023 motion hearing, MHT's counsel introduced Wheeler as the trustee for MHT, who sat at counsel table with counsel.

With the retirement of Judge Greg Sypolt and premature death of Judge James Triplett, Spokane County Superior Court Judge Tony Hazel entertained MHT's summary judgment motion. Judge Hazel granted the motion, while reasoning that res judicata, collateral estoppel, and the law of the case doctrine barred the filing of the judgment, partial assignment, and special notice against the disputed property. The court may have concluded that Elden and Joan Sorensen and VHT were the only judgment debtors under the 2012 judgment. According to Judge Hazel, the Sorensens held no ownership interest in the disputed property. No mechanism existed to permit a judgment to be recorded against property, in which a judgment debtor has no interest.

Pavlish and Boswell appeal. In their opening appeal brief, Pavlish and Boswell assigned no errors to the superior court's ruling. In addition to citing three cases for the propositions that a trust is not a legal entity and lacks standing to bring an action, Pavlish and Boswell, in that section of their brief's argument, twice referred this court to a total of four pages in their trial brief for a "full discussion" of the issue. Br. of App't 25. The two passages read:

> *See, full discussion at CP-142.*

Br. of App't at 25 (emphasis in original).

> *discussed @ CP-142-145.*

11

Br. of App't at 25 (emphasis in original).

LAW AND ANALYSIS

On appeal, Pavlish and Boswell ask for reversal on numerous grounds. First, plaintiff MHT lacked standing to sue. Second, the 2003 deed conveying the disputed property from SLT to MHT is void because the deed fails to name the trustee for MHT. Third, the ruling of Judge Greg Sypolt operates as collateral estoppel to preclude MHT from contending it is not a judgment debtor under the 2012 judgment and to prevent MHT from arguing that Elden and Joan Sorensen own the disputed property. Fourth, Judge Sypolt's ruling also operates as res judicata.

MHT, in response, requests that this court refuse to address some of Pavlish and Boswell's contentions because of their incorporating portions of their trial brief into their appeal brief. These contentions include MHT lacking standing to sue and the invalidity of the 2003 deed. MHT also asks that this court affirm the superior court's ruling that collateral estoppel and res judicata bar Pavlish and Boswell from asserting an interest in the disputed property. Assuming we address the merits of Pavlish and Boswell's contentions, MHT argues that a trust, rather than its trustee, may maintain a suit. MHT also argues the 2003 deed was valid. MHT asks for leave to name the trustee as a party plaintiff in the event we agree with that MHT lacks standing.

As a result of the parties' respective contentions, we spend most of our opinion applying procedural rules. We reject MHT's contention that Pavlish and Boswell

No. 39623-1-III,
*Mine Holding Trust v. Pavlish*

abandoned their lack of standing defense. We then hold that MHT lacks standing to file this lawsuit.

## Assignments of Error

In their opening brief, Pavlish and Boswell omit listing any assignment of error in violation of RAP 10.3(a)(4). Nevertheless, we waive application of the appellate rule because we can discern by the issues identified for review and by the arguments asserted in the brief that Pavlish and Boswell assign error to the summary judgment order that quieted title to the disputed property. We further fathom the reasons for challenging the order.

RAP 1.2(a) encourages this court to address the merits of an appeal rather than rejecting an appeal because of noncompliance with procedural rules. RAP 1.2(c) allows this court to waive procedural rules to serve the ends of justice. Modern rules of procedure are intended to allow the court to reach the merits of an appeal, as opposed to disposing the matter on technical niceties. *Fox v. Sackman*, 22 Wn. App. 707, 709, 591 P.2d 855 (1979). In this appeal, MHT does not ask for affirmance of the superior court's quiet title order on the basis of Pavlish and Boswell's noncompliance with RAP 10.3(a)(4).

## Incorporation of Trial Brief

MHT faults Pavlish and Boswell for incorporating portions of their trial brief which address the subjects of standing, res judicata, collateral estoppel, and the validity

13

of the 2003 deed, into their opening appeal brief. As a result of this purported assimilation, MHT entreats this court to reject Pavlish and Boswell's appeal. Pavlish and Boswell counter that they did not incorporate fragments of their trial briefs. They only cited to pages of the briefs to confirm that they presented the argument to the superior court. Pavlish and Boswell emphasize that RAP 10.3(a)(6) directs a party to include "references to relevant parts of the record" in the brief's argument. We only address whether we should decline review of the topic of standing.

We do not know whether Pavlish and Boswell purposely shortened their appeal brief by asking the court to read portions of their trial brief. We also do not know whether to characterize Pavlish and Boswell's opening brief as "citing" their trial brief or "incorporating" their trial brief. We lack the wisdom to draw a line between the act of citing another text and the task of incorporating another writing. Regardless, we side with Pavlish and Boswell. Although the trial brief provides a lengthier analysis, the opening appeal brief cites sufficient authority and adequately informs MHT and this court of the basis for the defense of lack of standing. We have ignored the trial memorandum's contents in coming to our decision.

A party may not incorporate, by reference, trial court briefs into appellate briefs. *U.S. West Communications, Inc. v. Washington Utilities & Transportation Commission*, 134 Wn.2d 74, 111–12, 949 P.2d 1337 (1997); *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998); *Patterson v. Superintendent of Public Instruction*, 76 Wn.

7App. 666, 676, 887 P.2d 411 (1994). Expanding the issues on appeal by references to trial briefs renders the Rules of Appellate Procedure meaningless. *State v. Kalakosky*, 121 Wn.2d 525, 540 n.18, 852 P.2d 1064 (1993). The appellate court will entertain only issues argued to it. RAP 10.3; RAP 12.1; RAP 13.7; *State v. Hoffman*, 116 Wn.2d 51, 71, 804 P.2d 577 (1991); *Howell v. Spokane & Inland Empire Blood Bank*, 114 Wn.2d 42, 46, 785 P.2d 815 (1990). Any issue for which a party has incorporated arguments by reference into their appellate court brief is deemed abandoned. *Holland v. City of Tacoma*, 90 Wn. App. 533, 538 (1998). A party properly references a trial memorandum in the appeal brief to the extent of alerting this court that it raised the question before the trial court. *State v. Kalakosky*, 121 Wn.2d 525, 540 (1993).

The Supreme Court described the purpose behind the rule against incorporation:

> Respondents would have no idea what issues required a response, and appellate courts would have to search trial court records and clerk's papers and address all issues raised below. Such an "end run" around the Rules of Appellate Procedure will not be sanctioned; the primary purpose of the rules is to afford fairness and notice of the scope of review to the court and all litigants.

*State v. Kalakosky*, 121 Wn.2d 525, 540 (1993). The rule behind prohibiting incorporation also stems from the principle that an appellate court will decline to address inadequately briefed issues. *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992); *Norcon Builders, LLC v. GMP Homes VG, LLC*, 161 Wn. App. 474, 486, 254 P.3d 835 (2011). Arguments unsupported by relevant citation of authority need not be

15

considered by this court. *State v. Hoffman*, 116 Wn.2d 51, 70–71 (1991); *Howell v. Spokane & Inland Empire Blood Bank*, 114 Wn.2d 42, 46 (1990).

In *U.S. West Communications, Inc. v. Washington Utilities & Transportation Commission*, 134 Wn.2d 74 (1997), the phone company challenged the Commission's denial of its petition for a rate increase. In its brief, U.S. West assigned error to the Commission's rejection of its cost studies. U.S. West argued that the Commission's ruling was not based on substantial evidence, was arbitrary, and was manifestly contrary to the evidence. U.S. West then, in a footnote, wrote that, although the company fully briefed the issues to the superior court, it lacked adequate space to brief them in the appeal. The Commission argued that U.S. West had waived this issue on appeal. The Supreme Court agreed.

In *Holland v. City of Tacoma*, 90 Wn. App. 533 (1998), Dwight Holland placed no argument in his appellate brief in support of two assignments of error and tried to expand the issues by referencing trial court briefs. He presented no reasoned argument in his appeal brief. If Holland had inserted the passages from the incorporated sections of the trial brief, the appeal brief would have lasted 186 pages, well in excess of the then 50-page limit. This court ruled that Holland had abandoned the two assigned errors.

Pavlish and Boswell did not seek to expand issues by referencing their trial brief. Their appeal brief's argument included citations to case law and sufficed for MHT to respond. The relevant procedural rule now limits the length of a brief on the number of

words, not pages. The word limitation for opening briefs is 12,000 words.

RAP 18.17(c)(2). Pavlish and Boswell's opening brief contains 7,857 words. If they had

inserted the portion of their trial brief that addressed standing, they likely would not have

exceeded the limitation and would have probably enjoyed the ability to insert all other

pages of the trial memorandum cited in their brief.

## Standing

We now address the merits of Pavlish and Boswell's contention that MHT, the

only named plaintiff, lacks standing because of its trust nature. Pavlish and Boswell

journey further and contend that MHT lacks any trustee. In their brief, Pavlish and

Boswell cite no part of the record for this factual assertion. We limit our discussion to

whether a trustee must be named as the party plaintiff and do not address whether any

trustee exists.

The controlling court rule, CR 17(a), declares:

> Real Party in Interest. Every action shall be prosecuted in the name
> of the real party in interest. An executor, administrator, guardian, bailee,
> trustee of an express trust, a party with whom or in whose name a contract
> has been made for the benefit of another, or a party authorized by statute
> may sue in the party's own name without joining the party for whose
> benefit the action is brought. No action shall be dismissed on the ground
> that it is not prosecuted in the name of the real party in interest until a
> reasonable time has been allowed after objection for ratification of
> commencement of the action by, or joinder or substitution of, the real party
> in interest; and such ratification, joinder, or substitution shall have the same
> effect as if the action had been commenced in the name of the real party in
> interest.

(Boldface omitted.) To have standing, a party must show a real interest in the subject matter of the lawsuit. The interest must be a present, substantial interest, as distinguished from a mere expectancy, or future, contingent interest, and the party must show that a benefit will accrue it by the relief granted. *Primark, Inc. v. Burien Gardens Associates*, 63 Wn. App. 900, 907, 823 P.2d 1116 (1992). In other words, a plaintiff must have a personal stake in the outcome of a case. *Sabey v. Howard Johnson & Co.*, 101 Wn. App. 575, 584, 5 P.3d 730 (2000).

The standing doctrine serves a variety of purposes, including ensuring that the plaintiff is the appropriate party to bring the action. *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 93 Fed. R. Serv. 3d 217 (2d Cir. 2015). Otherwise, the parties might need to relitigate a dispute. CR 17(a) protects a defendant against a subsequent action by the party actually entitled to recover and insures generally that the judgment will have its proper effect as res judicata. *Beal v. City of Seattle*, 134 Wn.2d 769, 782–83, 954 P.2d 237 (1998); *Plese-Graham, LLC v. Loshbaugh*, 164 Wn. App. 530, 538, 269 P.3d 1038 (2011); *Sprague v. Sysco Corp.*, 97 Wn. App. 169, 173, 982 P.2d 1202 (1999).

Pavlish and Boswell cite *Linklater v. Johnson*, 53 Wn. App. 567, 768 P.2d 1020 (1989) for the rule that only a trustee possesses standing to bring an action. We disagree that *Linklater* supports the rule. Darcy Linklater sued the seller of his house and the real estate agent for misrepresentation. After purchasing the residence, Linklater filed for bankruptcy. He failed to inform his bankruptcy trustee of the potential claim. The court

18

ruled that Linklater lacked standing to sue because legal claims became the property of the estate. The court did not address who may sue on behalf of a settlor's trust.

We nonetheless agree with Pavlish and Boswell on the question of standing. Washington case law recognizes that the trustee of an express trust is the proper party to bring suit for the trust. *Townsend v. Rosenbaum*, 187 Wash. 372, 392, 60 P.2d 251 (1936). Thus, the trustee is authorized to prosecute an action to quiet title to trust land in his or her own name without joining the trust beneficiaries. *Eichner v. Cahill*, 11 Wn.2d 108, 110–11, 118 P.2d 419 (1941); *Carr v. Cohn*, 44 Wash. 586, 588, 87 P. 926 (1906).

The universal rule proclaims that a trust itself may not sue or be sued directly. *In re Daniels*, 641 B.R. 165, 173 (Bankr. S.D. Ohio 2022) (applying Ohio law); *Ray Malooly Trust v. Juhl*, 186 S.W.3d 568, 571 (Tex. 2006). The trustee, rather than the trust, is the real party in interest in litigation involving trust property. *Navarro Savings Association v. Lee*, 446 U.S. 458, 464, 100 S. Ct. 1779, 64 L. Ed. 2d 425 (1980); *Massachusetts Laborers' Health & Welfare Fund v. Philip Morris, Inc.*, 62 F. Supp. 2d 236, 239 (D. Mass. 1999) (applying Massachusetts law); *Nicholson v. Fazeli*, 113 Cal. App. 4th 1091, 1102–03, 6 Cal. Rptr. 3d 881(2003). Going further, a trustee is a necessary or an indispensable party to proceedings affecting trust property. *Hett v. Barron-Lunde*, 290 So. 3d 565, 572 (Fla. Dist. Ct. App. 2020); *Bank of New York v. Bell*, 142 Conn. App. 125, 133 n.5, 63 A.3d 1026 (2013); *Sunbelt Environmental Services, Inc. v. Rieder's Jiffy Market, Inc.*, 138 S.W.3d 130, 134 (Mo. Ct. App. 2004); *Macaulay v.*

*Wachovia Bank of S.C., N.A.*, 333 S.C. 201, 208, 508 S.E.2d 46 (S.C. Ct. App. 1998). A trust is not a legal entity, and civil suits may be maintained only by or against parties having an actual or legal existence. *Lazenby v. Codman*, 116 F.2d 607, 609 (2d Cir. 1940); *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 261–62 (D. Md. 2015) (applying Maryland law); *Massachusetts Laborers' Health & Welfare Fund v. Philip Morris, Inc.*, 62 F. Supp. 2d 236, 239 (D. Mass. 1999) (applying Massachusetts law); *Bailey v. Vanscot Concrete Co.*, 894 S.W.2d 757, 759 (Tex. 1995); *Western Life Trust v. State of North Dakota*, 536 N.W.2d 709, 712 (N.D. 1995). In *Western Life Trust v. State of North Dakota*, the North Dakota Supreme Court dismissed an appeal brought by a trust because the trust lacked a legal existence.

The law designates the trustee as the sole legal owner of trust property. *In re Daniels*, 641 B.R. 165, 173 (Bankr. S.D. Ohio 2022) (applying Ohio law); *Bank of New York v. Bell*, 142 Conn. App. 125, 133 n.5 (2013); *Sunbelt Environmental Services, Inc. v. Rieder's Jiffy Market, Inc.*, 138 S.W.3d 130, 134 (Mo. Ct. App. 2004). Thus, a trustee has the sole right and responsibility to enforce a cause of action in favor of a trust, which is only abrogated to a beneficiary when the trustee cannot or will not enforce the cause of action. *Interfirst Bank–Houston, N.A. v. Quintana Petroleum Corp.*, 699 S.W.2d 864, 874 (Tex. App.-Houston 1st Dist. 1985). The trustee always has all the powers of management and control of the trust property, such that he or she should decide whether to bring suit. *Naier v. Beckenstein*, 131 Conn. App. 638, 646, 27 A.3d 104 (2011).

20

MHT notes that Keldon and Marianne Pavlish sued some of Elden and Joan Sorensen's trusts without naming the trustee of the trust. MHT seeks to use this earlier conduct to preclude the Pavlishes from complaining that MHT sued solely in its own name. The Sorensens, however, cite no law supporting this position. The Pavlishes likely sued the trusts in their own name because the Sorensens had not identified any trustee, assuming one ever existed, in their real estate documents.

MHT contends that any lack of standing did not preclude the trial court from granting the motion for summary judgment because MHT could amend its complaint to name the correct party. Presumably, MHT extends this contention to this appeal. MHT comments that, at the January 29, 2023 hearing, it sought to cure any defect by offering to add the name of a trustee to the court caption. The record confirms this offer, but MHT has never asked the court for permission to substitute a different plaintiff.

This court should particularly impose rules addressing the administration of trusts, including standing, on all Sorensen trusts, including MHT. Judge Greg Sypolt found that the numerous Sorensen trusts function as artificial entities employed by Elden Sorensen for a myriad of fraudulent activities. For this reason, we do not consider our ruling technical in nature or nitpicky.

## Remedy

To repeat, in *Western Life Trust v. State of North Dakota*, 536 N.W.2d 709 (N.D. 1995), the North Dakota Supreme Court dismissed an appeal brought by a trust because

21

the trust lacked a legal existence. Our circumstances are reverse because the defendant

appeals an order quieting title in favor of the trust. Thus, we do not dismiss the appeal,

but instead must determine what steps need to be taken next. Neither party has briefed

for the court the ramifications of MHT's lack of standing of MHT.

Because MHT lacked standing to maintain the suit, we vacate the order quieting

title and remand for further proceedings. On remand, the superior court should grant an

opportunity for the substitution of another plaintiff. When reviewing any motion, the

court should also consider any objections of Pavlish and Boswell to the motion.

To repeat, the last sentence in CR 17(a) reads:

> No action shall be dismissed on the ground that it is not prosecuted
> in the name of the real party in interest until a reasonable time has been
> allowed after objection for ratification of commencement of the action by,
> or joinder or substitution of, the real party in interest; and such ratification,
> joinder, or substitution shall have the same effect as if the action had been
> commenced in the name of the real party in interest.

CR 17 contemplates that a defendant will raise an "objection" that a claim is not being

prosecuted in the name of the real party in interest, after which a reasonable time will be

allowed for the plaintiff to take action, through joinder or otherwise, that protects the

defendant from the risk of a second claim. *Plese-Graham, LLC v. Loshbaugh*, 164 Wn.

App. 530, 538 (2011). Those steps include a motion under CR 15(c) to substitute the real

party in interest. We note that Pavlish and Boswell raised the objection to standing early

in MHT's suit and argued standing when opposing the summary judgment motion. MHT does not contend that Pavlish and Boswell failed to timely raise the objection.

Assuming the superior court denies any motion for substitution, the suit should be dismissed without prejudice. If the superior court permits leave to substitute a replacement plaintiff, the court will then need to determine whether to reaffirm its earlier rulings or entertain new motions. The superior court sits in a better position than this court to resolve these questions in the first place, and we lack input from the parties on this important question.

We do not address whether our analysis renders the 2003 deed to MHT void because the conveyance failed to mention a trustee. If the superior court allows a substitution of parties, the court will need to also address this question.

CONCLUSION

We vacate the superior court's order quieting title to MHT in the disputed property. We remand for further proceeding consistent with our opinion.

_____
Fearing, J.

WE CONCUR:

_____          _____
Lawrence-Berrey, C.J.                                    Cooney, J.

23